UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET FOWLER<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>*Defendants.* | Civil Action No. 18-634 (RDM) |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiff's second amended complaint. Dkt. 34. Plaintiff, Margaret Fowler, asserts three claims against Defendants, the Alcoholic Beverage Regulation Administration ("ABRA") and the District of Columbia. In Count I, she alleges that the ABRA discriminated against her by creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Dkt. 33 at 4–6 (2d Am. Compl. ¶¶ 36–56). In Count II, she alleges that the ABRA discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Dkt. 33 at 6–8 (2d Am. Compl. ¶¶ 57–75). And, in Count III, she alleges that the ABRA retaliated against her for engaging in protected equal employment opportunity activity in violation of Title VII. *Id.* at 8 (2d Am. Compl. ¶¶ 76–80). Defendants move to dismiss all three counts for failure to state a claim. Dkt. 34.

For the reasons explained below, the Court will **GRANT** Defendants' motion to dismiss.

1

## I. BACKGROUND

For purposes of Defendants' motion to dismiss, Plaintiff's factual allegations are taken as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Fowler is a 63-year-old woman, who has worked for the ABRA since 1987. Dkt. 33 at 2 (2d Am. Compl. ¶¶ 7–8). She has served as a Licensing Specialist, a Grade 11 position, since March 1994. *Id.* (2d Am. Compl. ¶ 8). In July 2016, her supervisor, Sean Gordy, requested that Kathy Kelly, one of Plaintiff's Grade 11 counterparts, remove approximately ten boxes of files from Plaintiff's desk, without advance notice. *Id.* at 2, 4 (2d Am. Compl. ¶¶ 9–10, 37). According to Plaintiff, the removal of those files interfered with her ability to perform her work because she did not "know exactly which client files she had and how much work needed to be done to complete the file and populate the information in the computer." *Id.* at 5 (2d Am. Compl. ¶ 38). Then, in November 2016, Gordy removed the remainder of Plaintiff's files from her desk without explanation and placed Kelly in charge of Plaintiff's files. *Id.* at 2 (2d Am. Compl. ¶¶ 9–10). To overcome the difficulties posed by the removal of her files, Plaintiff had to work "extended hours" without compensation. *Id.* at 6 (2d Am. Compl. ¶ 49).

The removal of Plaintiff's files resulted in a confrontation in November 2016. After Plaintiff received an inquiry from "a customer" and could not locate the relevant file, she asked Gordy about its whereabouts. *Id.* at 5 (2d Am. Compl. ¶ 39). Gordy said that "he would provide her with the file" but failed to do so "in a timely manner," prompting Plaintiff to request the file from Kelly. *Id.* (2d Am. Compl. ¶¶ 39–40). Kelly, in turn, refused to provide Plaintiff with the file without Gordy's concurrence. *Id.* (2d Am. Compl. ¶ 40). Not only did Plaintiff have to await Gordy's approval to gain access to the file, but, after instructing Kelly to release the file, Gordy "began to yell that [Plaintiff was] 'to go through him [to] retrieve her files.'" *Id.* (2d Am.

Compl. ¶¶ 40–41).  Fowler asked, "[W]hy are you treating me like this[?]  [I]t doesn't make any sense."  *Id.* (2d Am. Compl. ¶ 43).  In response, Gordy, who "is extremely tall with an athletic build," "leaned over and continued yelling at Plaintiff to the point where she felt threatened."  *Id.*  Gordy continued yelling even as Plaintiff told him that he was humiliating her and asked him to stop.  *Id.* (2d Am. Compl. ¶ 44).  Eventually, Plaintiff began walking toward ABRA Director Fred Moosally's office.  *Id.* (2d Am. Compl. ¶ 45).  Gordy followed her and, at one point, shoved her.  *Id.*  Plaintiff complained to Moosally about Gordy's conduct, but Moosally took no action in response to her complaint.  *Id.* at 3, 5 (2d Am. Compl. ¶¶ 14, 46).  He did, however, direct Plaintiff to speak with ABRA General Counsel Martha Jenkins, but, like Moosally, Jenkins never followed up on her complaint.  *Id.* at 7 (2d Am. Compl. ¶¶ 65–66).

Meanwhile, on November 3, 2016, the ABRA filed a request with the D.C. Department of Human Resources ("DCHR") "for support on a special investigation involving Plaintiff, based on allegations of employee misconduct and insubordination, including[,] but not limited to, making threats, behaving in an unstable manner, and exhibiting caustic behavior towards Mr. Gordy."  *Id.* at 2–3 (2d Am. Compl. ¶ 11).  "[T]he Audit and Special Investigations [] team . . . met with several witnesses, including various members of the ABRA Licensing Division and ABRA management to discuss the . . . allegations."  *Id.* at 3 (2d Am. Compl. ¶ 12).  As part of or in addition to this investigation, the DCHR moved forward on a complaint against Plaintiff that Moosally forwarded from Gordy.  *Id.* (2d Am. Compl. ¶ 14).  Moosally did not mention that Plaintiff had also complained to him about Gordy.  *Id.*

Plaintiff encountered additional challenges in the workplace throughout 2017.  On or about June 30, 2017, she was placed on a ninety-day Performance Improvement Plan ("PIP") "for failure to meet the minimum requirements for her position."  *Id.* (2d Am. Compl. ¶ 15).

3

Prior to issuance of the PIP, Plaintiff's supervisors had not indicated that her work was less than satisfactory; indeed, she received a "valued performer" rating in her performance evaluation for the period of October 1, 2015 to September 30, 2016. *Id.* (2d Am. Compl. ¶ 16). Plaintiff alleges that "[t]he American Federation of State, County and Municipal Employees, AFL-CIO, Local 2743 believes that DCHR failed to properly investigate this matter and placed Plaintiff on a PIP inconsistent with the personnel regulations." *Id.* (2d Am. Compl. ¶ 18). On September 1, 2017, the AFL-CIO Local requested "that all negative documents placed in [Plaintiff's] personnel folder [be] removed, and any leave used by [Plaintiff] in connection with this matter be restored." *Id.* (2d Am. Compl. ¶ 19).

Separately, in July 18, 2017, Fowler applied for bereavement leave to attend her ex-husband's funeral and to sort out related legal issues. *Id.* at 7 (2d Am. Compl. ¶ 68). When Plaintiff was "a younger age," she was granted bereavement leave—either by Gordy or another supervisor—to attend her ex-husband's mother's funeral. *Id.* Gordy, however, denied Plaintiff's request for leave to attend the funeral of her ex-husband. *Id.* And, more generally, Gordy continued to "display[] demeaning behavior" toward Plaintiff. *Id.* at 5 (2d Am. Compl. ¶ 47).

Plaintiff further alleges that, even though she was "the oldest Grade 11 employee, with the most experience and training, [she was] . . . overlooked for advancement opportunities to higher levels." *Id.* at 6 (2d Am. Compl. ¶ 59). She was passed over for two promotions for which she applied, while younger employees with "only one or two-years work experience at ABRA" received promotions. *Id.* at 6–7 (2d Am. Compl. ¶¶ 60–62).

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint on December 6, 2017, which the EEOC dismissed on December 8, 2017. *Id.* at 3 (2d Am. Compl. ¶ 20). Plaintiff received a right-to-sue letter from the EEOC on December 13, 2017. *Id.*

4

She filed this suit on March 20, 2018, alleging a hostile work environment in violation of Title VII and age discrimination in violation of the ADEA. Dkt. 1 at 1.

On November 6, 2018, several months after filing suit, Plaintiff received a "Notice of Proposed Suspension of [Five] Working Days" "based on [her] alleged tardiness and [non]compliance with Defendant ABRA's Internal Procedure for Time and Attendance." Dkt. 33 at 3 (2d Am. Compl. ¶¶ 21–22). The notice alleged that Plaintiff arrived late to work on a number of occasions. *Id.* (2d Am. Compl. ¶ 23). But, according to Plaintiff, each time that she was late for work she "compensated for the time missed by remaining at work past her designated time to leave." *Id.* at 4 (2d Am. Compl. ¶ 24). In contrast to Plaintiff, younger male employees who arrived late for work were allowed to compensate for the time they missed without reprimand. *Id.* (2d Am. Compl. ¶ 25). Plaintiff received the ABRA's final decision to suspend her for five days on December 20, 2018. *Id.* (2d Am. Compl. ¶ 26). She filed a grievance appealing her suspension on January 15, 2019, but the ABRA upheld the suspension on February 4, 2019. *Id.* (2d Am. Compl. ¶¶ 27–28).

On July 31, 2019, Plaintiff received notice that the ABRA planned to terminate her employment with the agency. *Id.* (2d Am. Compl. ¶ 30). The notice stated that she was being removed because she failed to meet her PIP requirements, to carry out her position responsibilities, to assist customers, and to complete her assigned caseload in a timely manner. *Id.* (2d Am. Compl. ¶ 31). Plaintiff appealed the agency's decision, "citing her belief that she was being targeted for failure and forced into early retirement." *Id.* (2d Am. Compl. ¶ 32). The ABRA upheld the decision to terminate Plaintiff. *Id.* (2d Am. Compl. ¶ 34). Plaintiff filed a claim with the EEOC and received a second right to sue letter. *Id.* (2d. Am. Compl. ¶ 35).

After she was terminated, Plaintiff amended her complaint in this action to add a Title VII retaliation claim. Dkt. 30-2 at 4, 8 (2d Am. Compl. Redline ¶¶ 30–35, 76–80); Dkt. 33 at 4, 8 (2d Am. Compl. ¶¶ 30–35, 76–80). In her Second Amended Complaint, Plaintiff alleges that Defendants created a hostile work environment in violation of Title VII, Dkt. 33 at 4–6 (2d Am. Compl. ¶¶ 36–56); discriminated against her on the basis of age in violation of the ADEA, *id.* at 6–8 (2d Am. Compl. ¶¶ 57–75); and retaliated against her for filing this action in violation of Title VII, *id.* at 8 (2d Am. Compl. ¶¶ 76–80).

Defendants move to dismiss for failure to state a claim. Dkt. 34.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is . . . unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Id.* at 555–56 (internal quotation marks omitted).

In an employment discrimination case, a plaintiff need not plead all elements of a prima facie case, so long as she alleges facts that render her claim plausible. *McManus v. Kelly*, 246 F.

Supp. 3d 103, 112 (D.D.C. 2017).  The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).  But, even though "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

### III.  ANALYSIS

**A.       Claims Against the ABRA**

Defendants first argue that the ABRA is *non sui juris* and therefore is not a proper party to this suit.  Dkt. 34 at 7–8.  The Court agrees.

"'[I]n the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities.'"  *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 231 (D.D.C. 2017) (alteration in original) (quoting *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011)); *see also Roberson v. D.C. Bd. Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976) (explaining that an entity within D.C. government may only be sued if the entity is statutorily a separate legal entity).  Here, the ABRA is an independent agency within D.C. government overseen by the Alcoholic Beverage Control Board.  D.C. Code §§ 25-201(c)(1), 25-202.  Plaintiff points to no provision of law that authorizes suit against the ABRA, nor is the Court aware of any such authorization.  *See* D.C. Code §§ 25-201, *et seq.*; *see also Scahill*, 271 F. Supp. 3d at 231 ("There appears to be no explicit statutory language in the D.C. Code authorizing the [D.C. Alcoholic Beverage Control] Board to sue or be sued.").

7

The Court therefore concludes that the ABRA is not subject to suit in its own right and, accordingly, will dismiss Plaintiffs' claims against the ABRA.

**B.      Title VII Hostile Work Environment Against the District of Columbia**

Plaintiff alleges that the removal of files from her control, the November 2016 incident involving yelling and shoving by Gordy, Moosally's failure to act on her complaint, Gordy's ongoing demeaning behavior, and her five-day suspension created a hostile work environment. Dkt. 33 at 4–6 (2d. Am. Compl. ¶¶ 36–56). As explained below, even if these allegations are taken as true, they do not state a hostile work environment claim under Title VII. Dkt. 34 at 8–11.

"A plaintiff asserting a claim based on a hostile work environment faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016). "To determine whether an environment is objectively abusive, courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Richardson v. Petasis*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *accord Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 (D.D.C. 2005), *aff'd sub. nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007) ("The workplace environment becomes 'hostile' for purposes of Title VII only when the offensive conduct 'permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (alteration in original) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "The standard is meant to be 'demanding' enough 'to ensure that Title VII does not become a general civility code' or create liability for 'the ordinary

8

tribulations of the workplace.'" *Vilsack*, 207 F. Supp. 3d at 92 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Nor is it enough to allege an abusive work environment; the plaintiff must also allege that the abusive work environment existed because of her Title VII protected status—in this case, her sex.  *See Nurriddin*, 382 F. Supp. 2d at 107.

Defendants maintain that none of Plaintiff's allegations satisfy this standard.  They argue that her five-day suspension "constitute[d a] work-related action[] by Plaintiff's supervisors" and, therefore, cannot support a discrimination claim, Dkt. 34 at 9–10; that the removal of Plaintiff's files, the appointment of Kelly to oversee those files, and Gordy's yelling at Plaintiff did not establish a hostile work environment for purposed of Title VII, *id.* at 8–10; and that Gordy's shoving Plaintiff, Moosally's failure to act on her complaint, and Gordy's demeaning behavior were neither severe nor pervasive enough to support Plaintiff's hostile work environment claim.  *Id.* at 8, 10–11.  More generally, Defendants contend that Plaintiff's allegations fail to draw the necessary nexus between the alleged events and Plaintiff's sex.  *Id.* at 11.

In response, Plaintiff argues that a plaintiff filing a Title VII complaint is not required to plead facts sufficient to prove each element of the case at the Rule 12(b)(6) motion to dismiss stage, Dkt. 36-1 at 4.  In  Plaintiff's view, she has made sufficient claims to survive a Rule 12(b)(6) motion to dismiss because, as a female employee, she suffered humiliation, invasion of personal space, yelling, and shoving by a male supervisor, as well as treatment that differed from that of her younger male colleagues, all of which together satisfy the pleading stage for a Title VII claim.  *Id.* at 5.

For several reasons, the Court finds that Plaintiff has failed to allege facts sufficient to state a Title VII hostile work environment claim:  Most of Plaintiff's allegations fail to draw any

9

link between the asserted, abusive conduct and her sex, and those allegations that do draw the required link fail to describe a sufficiently severe and pervasive environment of abuse to state a claim.

To start, Plaintiff alleges that her files were removed from her control; that Gordy yelled at her, shoved her, and generally demeaned her.  But beyond alleging that she is a woman and that Gordy is a man, Plaintiff fails to allege any facts that plausibly support her contention that any of these events occurred because of her sex.  The reassigned files, for example, were placed under the control of Kelly, another woman, and Plaintiff fails to allege any facts that would permit a plausible inference that Gordy yelled at or shoved Plaintiff because of her sex.  The same is true of Plaintiff's claim that Gordy engaged in a pattern of "demeaning behavior;" she alleges no facts that permit a plausible inference that Gordy demeaned her because of her sex.  Without some basis—any basis—to infer that Gordy acted because of Plaintiff's sex (or some other protective classification), she cannot state a Title VII hostile work environment claim.

To the extent that Fowler does pleads that any of the allegedly hostile acts occurred because of her sex, the alleged events were not sufficiently severe or pervasive to state a hostile work environment claim.  She alleges, for example, that Moosally forwarded Gordy's complaint to DCHR but not her complaint, Dkt. 33 at 3 (2d Am. Compl. ¶ 14), and that "[y]ounger *male* employees who are in similarly situated positions as Plaintiff who arrived late for work[] have been able to compensate for missing time by remaining at work past [their] designated time," *id.* at 4 (2d Am. Compl. ¶ 25) (emphasis added).  "[C]ourts have generally rejected hostile work environment claims that are based on work-related actions by supervisors." *Wade*, 780 F. Supp. 2d at 19.  But in any event, even if accepted as true, these isolated incidents do not amount to the type of severe and pervasively abusive conduct required to state a hostile work environment

10

claim. *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (finding the plaintiff's "assertion of pervasive and constant abuse [to be] undermined by the sporadic nature of the conflicts"); *see also Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because '[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim . . ..'") (quoting *Lester v. Natsios,* 290 F.Supp.2d 11, 33 (D.D.C. 2003)).

For the reasons above, the Court concludes that Fowler has not alleged facts sufficient to state a Title VII hostile work environment claim and will, accordingly, dismiss Count I.

**C. ADEA Claim Against the District of Columbia**

Plaintiff premises her ADEA claim on the following allegations: Gordy directed the removal of files from her control; Moosally failed to act on her complaint; Gordy denied her request for bereavement leave; Plaintiff did not receive two promotions; and Plaintiff was subjected to a five-day suspension. Dkt. 33 at 6–8 (2d Am. Compl. ¶¶ 57–75). Defendants contend that Plaintiff's ADEA claim fails for a variety of reasons: Plaintiff failed to bring this action within 180 days of receiving her EEOC right-to-sue letter; she failed to timely exhaust with respect to most of her allegations; and, in any event, Plaintiff's second amended complaint fails to include allegations sufficient to state a plausible claim that any of the these actions were taken because of her age. Dkt. 34 at 13–17.

Although Plaintiff opposes Defendants' motion to dismiss her hostile-work-environment and retaliation claims, she fails to respond to any of Defendants' arguments with respect to her ADEA claim. "'[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff

11

failed to address as conceded.'" *Hamilton v. United States*, No. 19-1105 (RDM), 2020 WL 6709758, at *4 (D.D.C. Nov. 16, 2020) (alteration in original) (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)); *see also Perisic v. Kim*, No. 18-cv-2038 (EGS), 2019 WL 5459048, at *13 (D.D.C. Oct. 24, 2019) (same); *Wang v. WMATA*, 206 F. Supp. 3d 46, 65–66 (D.D.C. 2016) (same). Here, moreover, Plaintiff is represented by counsel, who offers no argument respecting her *ADEA* claim and asserts only that she has "pled plausible facts to assert . . . viable Title VII *hostile work environment* and *retaliation* claims," Dkt. 36-1 at 7 (emphasis added), and who has had seven months to dispute Defendants' contention that Plaintiff has "conceded that . . . the Court should dismiss her ADEA claim[,]" Dkt. 37 at 1, but has said nothing. The logical inference is that, faced with the numerous problems with her ADEA claim described in Defendants' brief, Plaintiff has conceded the point.

The Court therefore concludes that Plaintiff has conceded that Count II of the second amended complaint fails to state a claim and will, accordingly, dismiss Count II.

**D.     Title VII Retaliation Against the District of Columbia**

Finally, Plaintiff amended her complaint to allege that she was terminated in retaliation for "fil[ing] a complaint with the Equal Employment Opportunity Commission and intiat[ing] [this] litigation to vindicate [] her claims for employment discrimination." Dkt. 33 at 8 (2d Am. Compl. ¶¶ 77–80). Defendants move to dismiss on two grounds: First, although "Plaintiff alleges [that] she received a right-to-sue letter, she notably fails to allege when she received it, which is fatal to her retaliation claim," Dkt. 34 at 17; and, second, Plaintiff has failed to "allege sufficient [facts] to establish [a] causal connection between any alleged protected activity and [the alleged] adverse action," that is, her termination, *id*.

12

Defendants' first argument is unpersuasive. The running of the statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c), and thus a plaintiff is not required to plead timeliness in her complaint, *see Marzorati v. MedStar-Georgetown Med. Ctr., Inc.*, 265 F. Supp. 3d 24, 26–27 (D.D.C. 2017); *see also Jones v. Bock*, 549 U.S. 199, 211–12 (2007) (describing Federal Rule of Civil Procedure 8(c) as "a nonexhaustive list of affirmative defenses" that need not be pleaded in a complaint). Defendants fail to cite any support for their contention that Plaintiff's failure to allege the date she received her right-to-sue letter "is fatal to her retaliation claim," Dkt. 34 at 17, and the Court is unaware of any precedent or rule that might support that proposition.

Defendants' second argument, in contrast, is persuasive. The anti-retaliation provision of Title VII makes it unlawful for an employer, including a federal employer, *see Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013), to:

> discriminate against any . . . employee[] or applicant[] for employment . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To prove a retaliation claim, a plaintiff "must show (1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook*, 737 F.3d at 772. "To survive [a] motion to dismiss, [the] plaintiff['s] complaint must 'contain sufficient factual matter, accepted as true,' to plausibly establish those three elements." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, the Court is persuaded that Plaintiff has failed to allege facts sufficient to claim plausibly that Defendants removed Plaintiff from her position because she had engaged in

13

protected activity. Plaintiff merely alleges (1) that she "received a Notice of Proposed Adverse Action: Removal" on July 31, 2019, Dkt. 33 at 4 (2d Am. Compl. ¶ 30); (2) that the Notice asserted that the proposed action was premised on Plaintiff's "failure to meet the requirements of her Performance Improvement Plan (PIP), [to] carry out her responsibilities as a Licensing Specialist, [and] [to] assist ABRA customers," based on her "undue delay in completing her assigned caseload," *id.* (2d Am. Compl. ¶ 31); (3) that "the agency upheld its [proposal] to terminate" her, *id.* (2d Am. Compl. ¶ 34); and (4) that she "believes that her termination [was] in direct retaliation for her filing the instant action against the agency," *id.* (2d Am. Compl. ¶ 33). Beyond these factual allegations, she merely makes the conclusory assertion that her "removal [was] causally connected to her EEOC complaint as well as the pending litigation to vindicate her claims for employment discrimination." *Id.* at 8 (2d Am. Compl. ¶ 80).

Because conclusory allegations are "not entitled to be assumed true," *Iqbal*, 556 U.S. at 681, Plaintiff is left with the allegations that her employer proposed her removal for poor performance and ultimately removed her, after she had filed an EEOC complaint and the pending action. More is needed to plead a retaliation claim, and, in particular, to plead the necessary causal connection. Although in some cases temporal proximity will suffice, *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003), here, too much time passed between Plaintiff's protected activity and the alleged, adverse action to establish—without any other pertinent allegations—a plausible theory of causation. Plaintiff alleges that she received the agency's Notice of proposed removal on July 31, 2019, Dkt. 33 at 4 (2d Am. Compl. ¶ 30), which was more than nineteen months after she filed her EEOC complaint, *id.* at 3 (2d Am. Compl. ¶ 20) (dating the EEOC claim as filed on

14

December 6, 2017), and more than sixteen months after she filed this action, Dkt. 1 (showing an ECF filing date of March 20, 2018).

In her opposition brief, Plaintiff contends that the Notice of proposed removal was issued by Gordy, who was the subject to her EEOC complaint and many of her allegations in this complaint; that Gordy was aware of Plaintiff's complaints about his behavior; and that her retaliation claim "is based on numerous instances" of harassment that ultimately led to her removal. Dkt. 36-1 at 6. For present purposes, the Court need not decide whether these assertions would suffice to plead causation because they are not contained in the second amended complaint, and a plaintiff (particular one represented by counsel) cannot amend her complaint in a brief in opposition to a motion to dismiss. *Sai v. TSA*, 326 F.R.D. 31, 33 (D.D.C. 2018); *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010). Plaintiff asserts that she cannot establish the necessary causal link without discovery. Dkt. 36–1 at 6. At this stage of the proceeding, she is not required to prove causation, but she is required to allege facts that, if accepted as true, plausibly state a claim—including all elements of a retaliation claim. Unless she can meet that minimal standard, she is not entitled to open the door to discovery in the hopes of finding something that might support her suspicion.

The Court therefore concludes that Plaintiff has failed to state a claim for retaliation and will, accordingly, dismiss Count III of the second amended complaint without prejudice.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss. Plaintiff may, if appropriate, file a third amended complaint with respect to Count III on or before December 11, 2020. If Plaintiff fails to file a third amended complaint by that date, the Court will enter final judgment at that time.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 27, 2020