IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET FOWLER | : |
|     Plaintiff, | : |
| | Case No.: 18-634 (RDM) |
|     v. | : |
| THE GOVERNMENT OF THE DISTRICT OF COLUMBIA | : |
| AND | : |
| THE ALCHOLIC BEVERAGE REGULATION ADMINSTRATION | : |
|     Defendants. | : |

## THIRD AMENDED COMPLAINT

Plaintiff Margaret Fowler ("Ms. Fowler" or "Plaintiff"), by and through her undersigned counsel, Charles Tucker Jr., Esquire, through the TUCKER MOORE GROUP LLP, seeks damages relating to disparate treatment in a hostile work environment and age discrimination against the Defendants, the Government of the District of Columbia ("Defendant") and the Alcoholic Beverage Regulation Administration ("ABRA" or "Defendant ABRA"). Plaintiff alleges as follows:

### I. NATURE OF THE ACTION

1. This lawsuit concerns the Defendants disparate treatment that subjected a 63-year-old woman, who has been employed by the Defendant for over 30 years, to age discrimination and a hostile work environment.

### II. PARTIES

2. Plaintiff is a resident of the District of Columbia and a citizen of the United States. Upon information and belief, and most of the time relevant to this Complaint, Plaintiff was employed by the Alcoholic Beverage Regulation Administration (ABRA).

3. Defendant District of Columbia is the Seat of the Government of the United States and a municipal corporation organized under the Constitution and laws of the United States.

4. Defendant Alcoholic Beverage Regulation Administration is a government agency that issues and maintains all licenses associated with the sale or service of wine, beer, and liquor within the District of Columbia. Defendant ABRA was the Plaintiff's employer during the time relevant to this action.

### III. JURISDICTION

5. This action arises under the United States Constitution and the laws of the District of Columbia. This claim may be brought to the United States Federal District Court for the District of Columbia Civil Division, pursuant to 28 U.S.C. §1331.

### IV. VENUE

6. Venue lies in the Federal District Court Civil Division, because the events, acts, and omissions giving rise to the Plaintiff's claims occurred within the District of Columbia. Venue is proper under 28 U.S.C. §1391. At all relevant times to the actions complained of herein, the Defendant ABRA conducted business within the District of Columbia.

### V. GENERAL ALLEGATIONS

7. Plaintiff is a 63-year-old, adult female who resides at 1013 Wahler Place, S.E., Washington, DC 20032.

8. Plaintiff has been employed with Defendant ABRA since August 17, 1987. Plaintiff holds the title of "Licensing Specialist" since March 1994, and she is a Grade 11 employee at ABRA.

9. On or about November 2016, Mr. Sean Gordy ("Mr. Gordy"), Licensing Program Manager at ABRA, and Supervisor to the Plaintiff, removed all of Plaintiff's files from her desk without giving her an explanation. This was not the first time Mr. Gordy has acted in this manner.

10. Mr. Gordy also requested that Ms. Kathy Kelly ("Ms. Kelly"), Plaintiff's Grade 11 counterpart and the Records Management Specialist, oversaw Plaintiff's files for no legitimate reason.

11. On November 3, 2016, the Department of Human Resources ("DCHR") received a request from ABRA for support on a special investigation involving Plaintiff, based on allegations of employee misconduct and insubordination, including but not limited to, making threats, behaving in an unstable manner, and exhibiting caustic behavior towards Mr. Gordy.

12. Between November 21, 2016 and December 16, 2016, the Audit and Special Investigations (ASI) team met with several witnesses, including various members of the ABRA Licensing Division and ABRA management to discuss the grievance allegations.

13. On January 13, 2017, after a comprehensive investigation, ASI closed the case.

14. DCHR moved forward on a complaint sent to them by ABRA Director Fred Moosally ("Mr. Moosally"); however, Mr. Moosally failed to advise all parties investigating the complaint that Plaintiff filed a verbal complaint with him the very same day Mr. Gordy filed a complaint. Instead of Mr. Moosally alerting DCHR of this important fact, he only submitted Mr. Gordy's complaint.

15. On or about June 30, 2017, Plaintiff was placed on a Performance Improvement Plan ("PIP") for about 90-days for failure to meet the minimum requirements for her position.

16. Prior to being notified about her PIP, Plaintiff was never informed that her work ethic was below satisfactory. In fact, Plaintiff received a "3" on her performance rating during the periods of October 1, 2015 – September 30, 2016, which equated to a "Valued Performer."

17. In November 2017, Plaintiff was given the standard operating procedures for the previously mentioned period at issue. The procedures simply included how to address a file folder and process incoming work. There was no information provided that related to the minimum requirements that the Plaintiff allegedly failed to meet for her position.

18. The American Federation of State, County and Municipal Employees, AFL-CIO, Local 2743 believes that DCHR failed to properly investigate this matter and placed Plaintiff on a PIP inconsistent with the personnel regulations.

19. On September 1, 2017, the Union requested that all negative documents placed in Plaintiff's personnel folder are removed, and any leave used by Plaintiff in connection with this matter be restored.

20. Plaintiff filed an Equal Employment Opportunity Claim ("EEOC") on December 6, 2017. The EEOC dismissed the claim on December 8, 2017, and Plaintiff received her right to sue letter on December 13, 2017.

21. Plaintiff filed the instant case on March, 20, 2018.

22. On November 6, 2018, Plaintiff received a Notice of Proposed Suspension of 5 Working Days.

23. The basis of the Proposed Suspension was based on Plaintiff's alleged tardiness and compliance with Defendant ABRA's Internal Procedure for Time and Attendance.

24. Specifically, the Notice alleged that Plaintiff arrived late to work on a number of occasions.

25. On any occasion where Plaintiff may have been minutes late for work, Plaintiff compensated for the time missed by remaining at work past her designated time to leave.

26. Younger male employees who are in similarly situated positions as Plaintiff who arrived late for works have been able to compensate for missing time by remaining at work past his designated time, despite Defendant's policy.

27. Plaintiff received Defendant ABRA's final decision to suspend her for 5 working days on December 20, 2018.

28. On January 15, 2019, Plaintiff filed a grievance to appeal Defendant ABRA's Decision.

29. On February 4, 2019, Defendant ABRA upheld its decision despite Plaintiff informing Defendant that she acted in the same conduct as younger male employees.

30. Plaintiff is being discriminated against based on her age and her gender.

31. On July 31, 2019, Plaintiff received a Notice of Proposed Adverse Action: Removal ("Notice").

32. The Notice alleges the reasons for Plaintiff's removal is Plaintiff's alleged failure to meet the requirements of her Performance Improvement Plan (PIP), carry out her responsibilities as a Licensing Specialist, failure to assist ABRA customers and undue delay in completing her assigned caseload.

33. Plaintiff appealed the decision of the agency, citing her belief that she was being targeted for failure and forced into early retirement.

34. Plaintiff believes that her termination is in direct retaliation for her filing the instant action against the agency.

35. Despite Plaintiff's efforts to appeal the decision, the agency upheld is decision to terminate Plaintiff.

36. Plaintiff filed a claim with the Equal Employment Opportunity Commission and has received a right to sue letter.

## VI. FIRST CLAIM FOR RELIF
(Retaliation Under Title VII)

37. Plaintiff incorporates all preceding paragraphs of this Complaint for the purposes of this claim.

38. To establish a *prima facie* case of retaliation, it must be shown that, "[plaintiff] engaged in activity protected by the statute; (2) that the employer…engaged in conduct having an adverse impact on the plaintiff; and (3) that the adverse action was causally related to the

plaintiff's exercise of the protected rights." *See Jones v. Billington*, 12 F.Supp.2d 1, 12-13 (1997).

39. Plaintiff engaged in a protected activity when she spoke with Mr. Moosally, a supervisor, in the winter of 2013 and made it known to him that Mr. Gordy was targeting her on the basis of her age.

40. Plaintiff had discussions similar to that described in ¶ 38 on many occasions regarding Mr. Gordy's conduct towards her.

41. Plaintiff made it known to Mr. Moosally that Mr. Gordy's conduct was discriminatory during these conversations.

42. After an incident in the November of 2016 where Mr. Gordy screamed at, demeaned, physically threatened, and shoved Plaintiff due to a miniscule office and bureaucratic issue, Plaintiff again alerted Mr. Moosally verbally as to the discriminatory conduct of Mr. Gordy.

43. This oppositional conduct done under the reasonable belief that Mr. Gordy's conduct violated the protections enshrined in Title VII was a protected activity on the part of Plaintiff.

44. No action was taken as part of these verbal communications.

45. Plaintiff filed a written grievance with Mr. Moosally as to Mr. Gordy's conduct on September 1, 2017.

46. Plaintiff engaged in a protected activity when she filed an EEOC complaint on December 6, 2017.

47. Plaintiff engaged in a protected activity when she filed the complaint in this instant case on March 20, 2018.

48. Plaintiff engaged in a protected activity when she filed a charge of discrimination with the DC Office of Human Rights on August 1, 2019.

49. It is further alleged that Plaintiff was engaged in a protected activity and is still engaged in a protected activity due to the nature of this ongoing litigation.

50. The litigation is intrinsically a protected activity as Plaintiff is engaged in oppositional conduct against Defendant for their discriminatory behavior which Plaintiff reasonably believes falls directly within Title VII.

51. Plaintiff's employer took adverse action against her in the form of a five day suspension and her ultimate termination.

52. Plaintiff's employer took an adverse employment action against her when she was placed on a Performance Improvement Plan (PIP) on June 28, 2019, despite favorable ratings entered in her annual performance review.

53. All of the above adverse actions took place during the pendency of the current litigation prefaced on Defendant's discriminatory actions.

54. All of these adverse actions occurred at the behest, direction, and/or involvement of Mr. Gordy, the individual responsible for discriminating against Plaintiff for a period of years.

55. Plaintiff's removal is causally connected to her EEOC complaint as well as the pending litigation to vindicate her claims for employment discrimination.

56. As such, Defendants are liable for the conduct of their employees acting within the scope of their duties and are thusly liable for retaliation under Title VII.

## V. SECOND CLAIM FOR RELIEF
(FMLA Interference)

57. Plaintiff incorporates all preceding paragraphs of this Complaint for the purposes of this claim.

58. To prevail under a claim of interference under FMLA, it must be shown that, "…[the plaintiff's] employer interfered with, restrain[ed], or denied the exercise of or attempt to exercise, any right provided by the FMLA and that [plaintiff's] were prejudiced thereby." *See Gordon v. U.S. Capitol Police*, 414 U.S.App.D.C. 204, 210 (2015).

59. In the beginning of June 2019, Plaintiff went to Mr. Moosally regarding her desire to use FMLA to recuperate and undergo a procedure for her disability.

60. Mr. Moosally determined that Plaintiff should go through Camille Robinson ("Ms. Robinson") to walk-through the procedure of utilizing FMLA.

61. Plaintiff went to Ms. Robinson in an attempt to exercise her FMLA rights in June of 2019 and was asked to fill out the requisite paperwork.

62. Plaintiff attempted to exercise her rights provided under FMLA on July 29, 2019 when she and her daughter asked Ms. Robinson to sign the Employer portion of the FMLA form.

63. Plaintiff memorialized the above described exchange by emailing the completed FMLA form with the Physician's Medical Facts on August 9, 2019.

64. Ms. Robinson unnecessarily and contrary to the law interfered with, restrained, or denied Plaintiff's use or attempted use of FMLA by delaying the FMLA paperwork from getting to where it needed to be with the DCHR.

65. Plaintiff was prejudiced by the delay as she was not able to secure a date for a procedure which would alleviate, in whole or in part, her disability.

66. Plaintiff was hoping to secure an earlier date for the procedure through FMLA, but Ms. Robinson's unnecessary delay, interference, restraint, or denial frustrated that use or attempted use of FMLA.

67. Plaintiff was prejudiced by the interference, restraining, and denial as she was not allowed the necessary time to recuperate due to her because of her disability and she was additionally terminated in retaliation, in part, because of her attempt to exercise her legal rights under FMLA.

68. As such, Defendants are liable for the conduct of their employees acting within the scope of their duties and are thusly liable for interference with Plaintiff's FMLA rights.

## VI. THIRD CLAIM FOR RELIEF
(Retaliation Under FMLA)

69. Plaintiff incorporates all preceding paragraphs of this Complaint for the purposes of this claim.

70. The elements of retaliation under the FMLA are, "…the employee engaged in a protected activity under this statute…the employee was adversely affected by an employment decision…and…the protected activity and the adverse employment action were causally connected." *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (2015) (quotation marks omitted).

71. Plaintiff engaged in a protected activity under the statute when she spoke with Ms. Robinson about using FMLA on July 29, 2019.

72. Plaintiff engaged in a protected activity when she emailed Ms. Robinson on August 9, 2019 reiterating the content of their conversation on July 29, 2019.

73. Plaintiff suffered an adverse employment action when she received a Notice of Proposed Adverse Action: Removal on July 31, 2019; only two days after she made a request for FMLA.

74. Plaintiff suffered an adverse employment action when the proposed adverse action materialized into an actual adverse action on October 15, 2019 with Plaintiff's termination being finally decided on.

75. As such, Defendants are liable for the conduct of their employees acting within the scope of their duties and are thusly liable for retaliation under FMLA.

**PRAYER FOR RELIEF**

WHEREFORE, based on the allegations and Causes of Action set forth above, which are fully incorporated herein, Plaintiff respectfully requests that this Court enter a judgment against the Defendant and grant the following:

a) Declaration that Defendants have violated the Title VII of the Civil Rights Act of 1964;

b) Compensatory and punitive damages to the Plaintiff for all the mentioned causes of action in an amount to be determined by a jury of her peers:

c) Plaintiff attorney's fees;

d) The cost and expenses of litigation;

e) An amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including pre-and post-judgment interest; and

f) Any other relief which this Court deems just and proper.

The Plaintiff further reserves the right and opportunity to assert additional claims and/or affirmative defenses not included in this Complaint and to further amend and/or supplement the information provided.

      Margaret Fowler, PLAINTIFF

By: __/s/Charles Tucker_____
Charles T. Tucker Jr. Esq.
Counsel for Plaintiff

/s/ Charles Tucker, Jr.                                *12/11/2020*
Charles Tucker Jr. Esq.                            Date
Attorney for the Plaintiff
Tucker Law Group, LLP
8181 Professional Place, Suite 207
D.C. Bar No: 993515
Hyattsville, MD 20785
Direct Dial (301) 577-1175
Email address: charles@tuckerlawgroupllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following parties via the

court electronic filing system:

Karl A. Racine
Attorney General for the
District of Columbia

Chad Copeland
Deputy Attorney General
Civil Litigation Division

Alicia M. Cullen #1015227
Chief, Civil Litigation Division, Section III

Michelle G. Hersh #980097
Assistant Attorney General
441 Fourth Street, NW, Suite 630 South
Washington, DC 20001
Phone: 202-807-0360
Email: michelle.hersh@dc.gov

Dated: December 11, 2020

*/s/ Charles Tucker, Jr.*
Charles Tucker, Jr.
Tucker Moore Group
8181 Professional Pl. Suite 207
Hyattsville, MD 20785
301-577-1175
Charles@tuckerlawgroupllp.com