## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET FOWLER<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>*Defendants.* | Civil Action No. 18-634 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Margaret Fowler brings this lawsuit against the District of Columbia and her former employer, the District of Columbia Alcohol Beverage Regulation Administration ("ABRA"). Before the Court is Plaintiff's third amended complaint, in which she alleges a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and claims for retaliation and interference with the right to take protected leave in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Dkt. 40 at 4–7 (3d Am. Compl. ¶¶ 37–75). For the third time, Defendants move to dismiss Plaintiff's complaint.

For the reasons that follow, the Court will **GRANT** in part and **DENY** in part Defendants' motion to dismiss.

## I.  BACKGROUND

For purposes of resolving the pending motion to dismiss, the Court accepts the following factual allegations as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Plaintiff, who is now 63 or 64 years old, worked for the ABRA from August 17, 1987, until October 15, 2019. Dkt. 40 at 2, 7 (3d Am. Compl. ¶¶ 7–8, 73–75). Beginning in 1994 and

1

until her termination, she served as a Licensing Specialist, a Grade 11 position. *Id.* at 2 (3d Am. Compl. ¶ 8). At some point, problems arose between Plaintiff and her supervisor, Licensing Program Manager Sean Gordy. In 2013, Plaintiff spoke with ABRA Director Fred Moosally about Gordy, informing Moosally that Gordy was "targeting her on the basis of her age." *Id.* at 5 (3d Am. Compl. ¶ 39). Plaintiff had similar discussions with Moosally about Gordy "on many occasions." *Id.* (3d Am. Compl. ¶¶ 40). In November 2016, for "no legitimate reason" and without explanation, Gordy removed Plaintiff's files from her desk and requested that Kathy Kelly, "Plaintiff's Grade 11 counterpart and the Records Management Specialist, overs[ee] Plaintiff's files." *Id.* (3d Am. Compl. ¶¶ 9–10). Around the same time that Gordy removed Plaintiff's files from her desk, an incident occurred in which Gordy "screamed at, demeaned, physically threatened, and shoved Plaintiff due to a miniscule office and bureaucratic issue." *Id.* at 5 (3d Am. Compl. ¶ 42). Plaintiff told Moosally about Gordy's conduct, but "[n]o action was taken as part of these verbal communications." *Id.* (3d Am. Compl. ¶¶ 42, 44).

Meanwhile, on November 3, 2016, the D.C. Department of Human Resources ("DCHR") received a request from the ABRA "for support on a special investigation involving Plaintiff, based on allegations of employee misconduct and insubordination, including . . . making threats, behaving in an unstable manner, and exhibiting caustic behavior towards Mr. Gordy." *Id.* at 2 (3d Am. Compl. ¶ 11). Between November 21 and December 16, 2016, the "Audit and Special Investigations" team met with "several witnesses, including various members of the ABRA Licensing Division and ABRA management." *Id.* at 3 (3d Am. Compl. ¶ 12). Following a comprehensive investigation, the Audit and Special Investigations team closed the case on January 13, 2017. *Id.* (3d Am. Compl. ¶ 13). As part of or in addition to this investigation, the DCHR "moved forward on a complaint sent to [it] by . . . Moosally," who "failed to advise all

parties investigating the complaint that Plaintiff filed a verbal complaint with him the very same day Mr. Gordy filed a complaint." *Id.* (3d Am. Compl. ¶ 14).

On or about June 30, 2017, Plaintiff was placed on a ninety-day Performance Improvement Plan ("PIP") for "failure to meet the minimum requirements for her position." *Id.* (3d Am. Compl. ¶ 15). Prior to that time, "Plaintiff was never informed that her work ethic was below satisfactory;" indeed, she had received a "Valued Performer" rating for her performance during the previous fiscal year ending September 30, 2016. *Id.* (3d Am. Compl. ¶ 16). According to Plaintiff, "[t]he American Federation of State, County and Municipal Employees, AFL-CIO, Local 2743 believe[d] that DCHR failed to properly investigate this matter and placed Plaintiff on a PIP inconsistent with the personnel regulations." *Id.* (3d Am. Compl. ¶ 18). On September 1, 2017, the union requested that "all negative documents placed in Plaintiff's personnel folder [be] removed, and any leave used by Plaintiff in connection with this matter be restored." *Id.* (3d Am. Compl. ¶ 19). That same day, Plaintiff filed a "written grievance" with Moosally regarding Gordy's conduct. *Id.* at 5 (3d Am. Compl. ¶ 45).

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on December 6, 2017, which the EEOC dismissed two days later. *Id.* at 3 (3d Am. Compl. ¶ 20). Plaintiff received a right-to-sue letter from the EEOC on December 13, 2017. *Id.* She then filed this lawsuit on March 20, 2018, *id.* (3d Am. Compl. ¶ 21), initially alleging that Defendants created a hostile work environment in violation of Title VII, Dkt. 1 at 3–5 (Compl. ¶¶ 21–34), and that they discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Dkt. 1 at 5–6 (Compl. ¶¶ 35–46).

Roughly nine months after filing suit, on November 6, 2018, Plaintiff received a "Notice of Proposed Suspension of [Five] Working Days" based on her "alleged tardiness and [non]compliance" with the ABRA's "Internal Procedure for Time and Attendance." Dkt. 40 at 3 (3d Am. Compl. ¶¶ 22–23). The notice alleged that Plaintiff arrived late to work on multiple occasions. *Id.* (3d Am. Compl. ¶ 24). But, according to Plaintiff, each time she was late for work she "compensated for the time missed by remaining at work past her designated time to leave." *Id.* at 4 (3d Am. Compl. ¶ 25). By contrast, younger male employees who arrived late for work were permitted to make up the time they missed without reprimand. *Id.* (3d Am. Compl. ¶ 26). On December 20, 2018, Plaintiff received the ABRA's final decision to suspend her for five days. *Id.* (3d Am. Compl. ¶ 27). She appealed her suspension on January 15, 2019, but the ABRA affirmed its decision on February 4, 2019. *Id.* (3d Am. Compl. ¶¶ 28–29).

In early June 2019, Plaintiff met with Moosally to express her desire to take FMLA leave to "recuperate and undergo a procedure for her disability." *Id.* at 6 (3d Am. Compl. ¶ 59). Moosally directed Plaintiff to speak with another employee, Camille Robinson, to "walk-through the procedure of utilizing FMLA [leave]." *Id.* (3d Am. Compl. ¶ 60). Sometime later in June, Plaintiff "went to . . . Robinson in an attempt to exercise her FMLA rights," and Robinson directed Plaintiff to fill out the "requisite paperwork." *Id.* (3d Am. Compl. ¶ 61). On June 28, 2019, Plaintiff was placed on a second PIP, despite receiving favorable ratings in her annual performance review. *Id.* (3d Am. Compl. ¶ 52).

On July 29, 2019, Plaintiff asked Robinson to "sign the Employer section of the FMLA form." *Id.* (3d Am. Compl. ¶ 62). Two days later, on July 31, Plaintiff received a "Notice of Proposed Adverse Action: Removal" that notified her of the ABRA's intention to terminate her employment. *Id.* at 4 (3d Am. Compl. ¶ 31). According to Plaintiff, the notice stated that her

removal was based on an "alleged failure to meet the requirements of her [PIP], [to] carry out her responsibilities as a Licensing Specialist, . . . to assist ABRA customers and undue delay in completing her assigned caseload." *Id.* (3d Am. Compl. ¶ 32).  Plaintiff appealed the agency's decision, "citing her belief that she was being targeted for failure and forced into early retirement." *Id.* (3d Am. Compl. ¶ 33).  On August 1, one day after receiving the notice of termination, Plaintiff filed a charge of discrimination with the D.C. Office of Human Rights. *Id.* at 5 (3d Am. Compl. ¶ 48).  Meanwhile, Plaintiff continued to pursue her request for FMLA leave, emailing "the completed FMLA form with the Physician's Medical Facts" on August 9, 2019. *Id.* at 6 (3d Am. Compl. ¶ 63).  Plaintiff's termination became final on October 15, 2019. *Id.* at 4, 7 (3d Am. Compl. ¶¶ 35, 74).  Plaintiff "filed a claim with the [EEOC] and . . . received a right-to-sue letter." *Id.* at 4 (3d Am. Compl. ¶ 36).

After Plaintiff was terminated, she amended her complaint in this action to add a retaliation claim under Title VII.  Dkt. 33 at 4, 8 (2d Am. Compl. ¶¶ 30–35, 76–80).  In her second amended complaint, Plaintiff alleged that Defendants created a hostile work environment in violation of Title VII, *id.* at 4–6 (2d Am. Compl. ¶¶ 36–56); discriminated against her on the basis of her age in violation of the ADEA, *id.* at 6–8 (2d Am. Compl. ¶¶ 57–75); and retaliated against her in violation of Title VII, *id.* at 8 (2d Am. Compl. ¶¶ 76–80).  In response, Defendants moved to dismiss for failure to state a claim.  Dkt. 34.

On November 27, 2020, the Court granted Defendants' motion in its entirety.  Dkt. 39.  First, the Court dismissed Plaintiff's claims against the ABRA on the ground that the ABRA is *non sui juris*. *See id.* at 7.  Second, the Court dismissed Plaintiff's Title VII hostile work environment claim against the District of Columbia, holding that she had failed to allege facts sufficient to state a claim; for the most part, she failed to allege any causal nexus between the

challenged conduct and her sex, and, where she did allege some connection to her sex, she failed to allege misconduct that was sufficiently severe and pervasive to state a claim. *Id.* at 9–10. Third, the Court dismissed Plaintiff's ADEA claim on the ground that Plaintiff conceded the point by failing to offer any response to this aspect of Defendants' motion. *Id.* at 11–12. Finally, the Court dismissed Plaintiff's Title VII retaliation claim on the ground that Plaintiff had failed to allege facts sufficient to "establish [a] causal connection between any alleged protected activity and [the alleged] adverse action." *Id.* at 12 (alterations in original) (quoting Dkt. 34 at 17). As the Court explained, Plaintiff's allegations were both too thin and too conclusory to state a claim. *Id.*

Although Plaintiff had already filed three complaints—the initial complaint, the first amended complaint, and the second amended complaint—the Court granted Plaintiff leave to amend with respect to her Title VII retaliation claim, principally because Plaintiff alluded in her opposition brief to additional facts that might support her claim. *Id.* at 15–16. On December 11, 2020, Plaintiff filed her third amended complaint, expanding on her Title VII retaliation claim and adding two claims under the FMLA. Dkt. 40 at 4–7 (3d Am. Compl. ¶¶ 37–75). Plaintiff now alleges that Defendants retaliated against her for engaging in protected activity in violation of Title VII, *id.* at 4–6 (3d Am. Compl. ¶¶ 37–56); interfered with her ability to exercise her leave rights under the FMLA, *id.* at 6–7 (3d Am. Compl. ¶¶ 57–68); and retaliated against her for seeking leave in violation of the FMLA, *id.* at 7 (3d Am. Compl. ¶¶ 69–75). Defendants again move to dismiss for failure to state a claim. Dkt 42.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)).  The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor must the complaint demonstrate that recovery is likely, so long as the facts alleged are "enough to raise a right to relief above the speculative level," *id*. at 555–56 (internal quotation marks omitted).

In an employment discrimination case, a plaintiff need not plead all elements of a prima facie case, so long as she alleges facts that render her claim plausible.  *McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017).  The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).  But, even though "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

## III.  ANALYSIS

### A.    Claims Against the ABRA

Defendants first argue that Plaintiff's claims against the ABRA should be dismissed because the ABRA is not a proper party.  Dkt. 42 at 5–6.  As Defendants correctly point out, the

Court previously held that the ABRA is *non sui juris* and dismissed Plaintiff's claims against it. Dkt. 39 at 7.  Plaintiff presents no new arguments or authorities that would support a different conclusion, and the Court is unaware of any changes in the relevant law since the Court last decided this precise issue in this very case.

Accordingly, the Court again concludes that the ABRA is not a proper party and will dismiss Plaintiff's claims against it with prejudice.

**B.      Title VII Retaliation Against the District of Columbia**

The elements of a Title VII retaliation claim are well-established: the plaintiff must allege and ultimately prove (1) that she "engaged in statutorily protected activity," (2) that she "suffered a materially adverse action" at the hands of her employer, and (3) that "a causal link connects the two."  *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong.*, 737 F.3d 767, 772–73 (D.C. Cir. 2013); *see also Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 50 (D.D.C. 2015).  Here, Plaintiff alleges that her grievances against Gordy—formal and informal—were protected activities under Title VII.  Among these, Plaintiff points to the concerns she raised to Moosally about Gordy in 2013 and 2016; her charge with the EEOC in December 2017; the commencement of this suit in March 2018 and its continuation; and her charge of discrimination with the D.C. Office of Human rights in August 2019.  Dkt. 40 at 5–6 (3d Am. Compl. ¶¶ 39–50).  According to Plaintiff, Defendants retaliated against her several times during the relevant period, including by suspending her for five days in November 2018 and ultimately proposing her termination in July 2019.  *Id.* (3d Am. Compl. ¶¶ 51–54).  And, Plaintiff further alleges, these retaliatory actions occurred "at the behest, direction, and/or involvement of Mr. Gordy, the individual [allegedly] responsible for discriminating against Plaintiff for a period of years."  *Id.* (3d Am. Compl. ¶ 54).

Defendants' motion to dismiss Plaintiff's Title VII retaliation claim rests on two affirmative defenses: First, Defendants argue that Plaintiff's retaliation claim, to the extent that it is "based on her placement on a PIP" in June 2017, is time-barred.  Dkt. 42 at 8–9.  Second, they contend that Plaintiff failed to exhaust her administrative remedies with respect to her claims arising from her suspension in November 2018 and her termination in July 2019.  *Id.* at 9–10.  In general, a plaintiff is not required to anticipate affirmative defenses or to plead facts sufficient to avoid those defenses.  *See, e.g.*, *de Cspepel v. Republic of Hungary*, 714 F.3d 591, 607–08 (D.C. Cir. 2013) ("[A]lthough it is certainly true that plaintiffs must plead the elements of their *claims* with specificity, they are not required to negate an affirmative defense in their complaint." (alterations and internal quotation marks omitted)).  But if the availability of an affirmative defense is clear and conclusive on the face of the complaint, and if the plaintiff fails to identify any counterargument that might require factual development (such as equitable estoppel or tolling), the defendant may prevail on a motion to dismiss.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations [of the complaint] show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred . . . . [D]ismissal *with prejudice* is warranted only when a trial court 'determines that "the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."'" (internal citation omitted) (quoting *Jarrell v. USPS*, 753 F.2d 1088, 1091 (D.C.Cir.1985)); *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985) ("[A] motion to dismiss may be granted on the basis that the action is time-barred only when it appears from the face of the complaint that the relevant statute of limitations bars the action."); *Potts v. Howard Univ. Hosp.*, 598 F. Supp. 2d 36, 39 (D.D.C. 2009) ("[T]he court

9

should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.").

Defendants bear the burden of demonstrating that Plaintiff's Title VII retaliation is time-barred,

*see, e.g.*, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), and at this early stage of

the proceeding, that burden is a particularly heavy one, *see Fennell v. AARP*, 770 F. Supp. 2d

118, 125–26 (D.D.C. 2011).

    1. *2017 PIP Claim*

    Defendants move to dismiss Plaintiff's retaliation claim on statute of limitations grounds,

at least to the extent that Plaintiff alleges that Defendants violated Title VII by placing Plaintiff

on a PIP in late June 2017. Although the complaint provides little detail, for present purposes

the Court will assume that Plaintiff exhausted administrative remedies by raising her placement

on a PIP when she filed her claim with the EEOC on December 6, 2017. Dkt. 40 at 3 (3d Am.

Compl. ¶ 20). But, even with the benefit of that assumption, Defendants argue that Plaintiff

failed to file this action within ninety days of receiving a right-to-sue letter from the EEOC on

December 13, 2017, as required by Title VII. *See* 42 U.S.C. § 2000e–5(f)(1).

    The 90-day period for filing a Title VII action after a plaintiff receives a right-to-sue

letter "begins the day after the letter is received, and then expires on the 90th day thereafter."

*Gill v. District of Columbia*, 872 F. Supp. 2d 30, 35 (D.D.C. 2012) (citing Fed. R. Civ. P.

6(a)(1)). If Plaintiff received the right-to-sue letter on December 13, 2017, as she alleges in her

third amended complaint, Dkt. 40 at 3 (3d Am. Compl. ¶ 20), she would have been required to

file this lawsuit on or before March 14, 2018. Yet, Plaintiff did not initiate this action until

March 20, 2018, *id.* (3d Am. Compl. ¶ 21), six days after the deadline. Although six days is not

much, courts will dismiss suits that are filed even one day late. *See, e.g., Gill*, 872 F. Supp. 2d at

35 (dismissing a claim that was filed ninety-two days after the plaintiff received an EEOC right-

to-sue letter); *Smith v. Dalton*, 971 F. Supp. 1, 4 (D.D.C. 2017) (holding that a complaint that was filed ninety-one days after the plaintiff received an EEOC right-to-sue letter was time-barred).  As a result, it is clear from the face of the third amended complaint that Plaintiff's retaliation claims based on the December 2017 right-to-sue letter are time-barred, and Plaintiff fails to identify any argument or theory that might justify her delay or warrant factual development.[1]  In short, "the complaint on its face is conclusively time-barred."  *Firestone*, 76 F.3d at 1209.

Rather than attempting to justify her late filing, Plaintiff maintains that the date provided in her third amended complaint is incorrect and that, in fact, she received her right-to-sue letter on December 19, 2017.  Dkt. 45 at 5.  To demonstrate that including the December 13 date in her third amended complaint was merely a scrivener's error, Plaintiff points to the *original* complaint, which alleged that she received the right-to-sue letter on December 19.  *See* Dkt. 1 at 3 (Compl. ¶ 20) ("The EEOC dismissed the claim on December 8, 2017, and Plaintiff received her right to sue letter on December 19, 2017.").  Each amended complaint filed thereafter, however, alleges that Plaintiff received the right-to-sue letter on December 13.  *See* Dkt. 23 at 3 (Am. Compl. ¶ 20); Dkt. 33 at 3 (2d Am. Compl. ¶ 20); Dkt. 40 at 3 (3d Am. Compl. ¶ 20).

Treating Plaintiff's argument as a motion for leave to file a fourth amended complaint, the Court denies that request as futile.  *See Sai v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015) ("[I]t is well established that leave to amend should be denied when amendment would be futile.").  Had Plaintiff received the letter on December 19, 2017, as she now contends, the last

---

[1] In "narrowly tailored circumstances," waiver, estoppel, or equitable tolling may excuse a plaintiff's failure to meet the 90-day requirement.  *McAlister v. Potter*, 733 F. Supp. 2d 134, 143–44 (D.D.C. 2010).  Plaintiff, however, does not invoke—or hint at the availability of—any of these doctrines.

11

day to file a Title VII action would have been March 19, 2018—or a day before she filed the instant action.  Accordingly, even assuming that Plaintiff made a mistake in her third amended complaint, permitting Plaintiff to correct that mistake would not cure the flaw in her claim; the claim would remain untimely.

The Court, therefore, concludes that Plaintiff's Title VII retaliation claim relating to events addressed in the EEOC's December 2017 right-to-sue letter is time-barred and will dismiss that claim pursuant to Rule 12(b)(6).

2.  *Proposed Suspension and Proposed Termination Claims*

Defendants also argue that Plaintiff failed to exhaust her administrative remedies with respect to her November 2018 proposed suspension and her July 2019 proposed termination. Dkt. 42 at 9–10.  Before a plaintiff may bring a civil action for retaliation under Title VII, she must file an EEOC charge for "each discrete discriminatory act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), within 180 days of the discriminatory act's occurrence, *see* 42 U.S.C. § 2000e–5(e)(1).  This deadline is extended to 300 days if the plaintiff first initiates proceedings with a state or local equal employment opportunity agency.  *Id.*; *see also Craig v. District of Columbia*, 881 F. Supp. 2d 26, 31 (D.D.C. 2012).  Invoking this rule, Defendants argue that Plaintiff cannot pursue any "retaliation claims predicated on acts that occurred after" she filed her EEOC claim on "December 6, 2017."  Dkt. 42 at 10.

This argument misses one critical fact: Plaintiff alleges that she "filed a charge of discrimination with the D.C. Office of Human Rights on August 1, 2019," Dkt. 40 at 5 (3d Am. Compl. ¶ 48), shortly after she received the "Notice of Proposed Adverse Action: Removal," on July 31, 2019, *id.* at 7 (3d Am. Compl. ¶ 73).  The D.C. Office of Human Rights ("DCOHR") and the EEOC have a "worksharing agreement" under which the agencies have "designated each

other as their agents for the purpose of receiving . . . charges." *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 25–26 (D.D.C. 2020) (cleaned up).  A plaintiff may, among other things, cross-file a DCOHR charge with the EEOC.  *See Adams v. District of Columbia*, 740 F. Supp. 2d 173, 178 (D.D.C. 2010); *Ross v. Georgetown Univ.*, No. 18-cv-0671, 2019 WL 2452326, at *4 (D.D.C. June 12, 2019).  Although the Court cannot discern from the bare allegations of the third amended complaint whether this charge was filed with the DCOHR pursuant to 42 U.S.C. § 2000e–5(e)(1), and whether it was cross-filed with the EEOC, a Title VII plaintiff is not required to plead exhaustion, *see Moore v. District of Columbia*, 445 Fed. App'x 365, 366 (D.C. Cir. 2011) ("A plaintiff need not plead exhaustion in his complaint."); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) (explaining that "the Title VII and ADEA exhaustion requirements are properly viewed as affirmative defenses," which the defendant must raise and prove); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 85 (D.D.C. 2014), *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 182 n.21 (D.D.C. 2012) ("The Court is cognizant that because failure to exhaust administrative remedies is an affirmative defense, a plaintiff does not need to plead exhaustion in a complaint."), and, in any event, the Court must indulge all doubts in Plaintiff's favor at this stage of the proceeding, *see Zimmerman v. Al Jazeera Am.*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017).  Moreover, although once again far from clear, after alleging that she was terminated in retaliation for engaging in protected activities and unsuccessfully appealing that termination, Plaintiff alleges that she "filed a claim with the Equal Employment Opportunity Commission and . . . received a right to sue letter," Dkt. 40 at 4 (3d

Am. Compl. ¶¶ 34–36), at least suggesting that she filed a separate claim with the EEOC (or with the DCOHR on behalf of the EEOC) after she was terminated.[2]

If this understanding of the facts is correct, and for present purposes the Court must assume that it is, *see Zimmerman*, 246 F. Supp. 3d at 285, Plaintiff pursued administrative remedies for adverse actions she suffered after filing her initial EEOC charge in December 2017. In other words, at least on Plaintiff's telling and drawing all reasonable inferences in her favor, she filed a "charge" with the DCOHR (and cross-filed with the EEOC) on August 1, 2019, and thus timely exhausted any claims raised in that "charge" involving misconduct that occurred up to 300 days before August 1, 2019—that is, any covered misconduct occurring from October 5, 2018 until August 1, 2019.  It thus follows that Defendants have failed to meet their heavy burden of showing that they are conclusively entitled to prevail on their exhaustion defense based on the bare pleadings.  Finally, it does not matter that Plaintiff commenced this lawsuit before she received her second right-to-sue letter; "the law is clear that 'the defect of a prematurely filed lawsuit may be excused when it is cured by the issuance of a right to sue letter while the action is pending.'"  *Peters*, 873 F. Supp. 2d at 181 (quoting *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008)).

The Court will, accordingly, deny Defendants' motion to dismiss Plaintiff's Title VII retaliation claim with respect to events occurring after October 5, 2018.

**B.      FMLA Claims Against the District of Columbia**

---

[2] Plaintiff confirms this understanding of the facts in her opposition brief, arguing that she filed her claim with "the EEO office" on August 1, 2019, and received her right-to-sue letter on August 25, 2019.  Dkt. 45 at 6.  When the allegations of the third amended complaint are read in this light, it appears that Plaintiff initiated the EEOC process by filing a claim with the DCOHR on August 1, 2019.  Whether that assumption is correct is for another day, and, if it is mistaken, Defendants can make an appropriate showing in a motion for summary judgment.

Plaintiff also amended her complaint to allege that Defendants violated her rights under the FMLA.  The FMLA "entitles eligible employees to take unpaid leave for family and medical reasons."  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 206 (D.C. Cir. 2015) (citing 29 U.S.C. §§ 2601 *et seq.*).  Two types of claims are available under the FMLA: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1)," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he was engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2)."  *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 98 (D.D.C. 2016) (quoting *Hopkins v. Grant Thornton Int'l*, 851 F. Supp. 2d 146, 152 (D.D.C. 2012)).  "Although 'the text of the FMLA does not clearly label these two claims as ones for "retaliation" and "interference," "those are the labels courts have used in describing an employee's conduct under the Act."'"  *Id.* (quoting *Hopkins*, 851 F. Supp. 2d at 152 n.6).  In her third amended complaint, Plaintiff raises both claims against Defendants.

1. *Interference Claim*

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or den[ying] the exercise of or the attempt to exercise" FMLA-protected rights.  29 U.S.C. § 2615(a)(1)).  To prevail on an FMLA interference claim, "a plaintiff must show (1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of FMLA . . . rights, and (2) prejudice arising from the interference."  *Savignac*, 486 F. Supp. 3d at 42.  Here, Plaintiff alleges that Defendants interfered with her FMLA rights by preventing her from "secur[ing] a date for a [medical] procedure which would alleviate in whole or in part, her disability."  Dkt. 40 at 7 (3d Am. Compl. ¶ 65).  In June 2019, Plaintiff told Moosally she wanted to take FMLA leave "to recuperate and undergo a procedure for her disability."  *Id.* at 6 (3d Am. Compl. ¶ 59).  Moosally

directed Plaintiff to speak with Robinson, who instructed Plaintiff to "fill out the requisite paperwork." *Id.* (3d Am. Compl. ¶¶ 60–61).  On July 29, 2019, Plaintiff "attempted to exercise her rights provided under FMLA . . . when she and her daughter asked Ms. Robinson to sign the Employer portion of the FMLA form." *Id.* (3d Am. Compl. ¶ 62).  Plaintiff then emailed "the completed FMLA form" on August 9, 2019. *Id.* (3d Am. Compl. ¶ 63).  Plaintiff alleges that Robinson "unnecessarily . . . delay[ed] the FMLA paperwork from getting to where it needed to be with the DCHR," which resulted in Plaintiff's failure to "secure an earlier date for the procedure." *Id.* at 6–7 (3d Am. Compl. ¶¶ 64, 66).  Consequently, "Plaintiff was not allowed the necessary time to recuperate." *Id.* at 7 (3d Am. Compl. ¶ 67)*.*

Defendants argue that Plaintiff's FMLA interference claim should be dismissed because her allegations describe nothing more than "the regular process of requesting FMLA leave, in which the employee and agency officials sign the relevant paperwork."  Dkt. 42 at 11.  When an employee seeks to use FMLA-protected leave, the employee must provide notice to her employer in accordance with applicable federal regulations.  *See* 29 C.F.R. § 825.302 ("Employee notice requirements for foreseeable FMLA leave"); *cf. Thomas v. District of Columbia*, 197 F. Supp. 3d 100, 109 (D.D.C. 2016) ("The FMLA's protections will not apply if 'timely and adequate communication is not given' by the employee to the employer, even if the employee has a serious health condition." (quoting *Ghawanmeh v. Islamic Saudi Acad.*, 857 F. Supp. 2d 22, 40 (D.D.C. 2012)).  If the employee's need to take leave is foreseeable, such as a for a "planned medical treatment for a serious health condition," the regulations require that an employee provide "at least 30 days advance notice" to her employer before FMLA leave is to begin.  29 C.F.R. § 825.302(a).  In addition, absent "unusual circumstances," an employer may require that notice be given in the form of "the employer's usual and customary notice and procedural

requirements for requesting leave." *Id.* § 825.302(d).  "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id.*

The Court agrees with Defendants that Plaintiff's third amended complaint fails to allege an FMLA interference claim.  Drawing all reasonable inferences in Plaintiff's favor, the third amended complaint alleges that Plaintiff sought to take foreseeable FMLA-protected leave for a routine medical procedure.  *See* Dkt. 40 at 6 (3d Am. Compl. ¶ 59).  When Plaintiff approached Moosally with her request, Moosally directed Plaintiff to contact Robinson, who instructed Plaintiff to complete the "requisite paperwork."  *Id.* (3d Am. Compl. ¶¶ 59–61).  Neither of those actions could plausibly be construed as interfering with Plaintiff's FMLA-protected rights; rather, they appear consistent with the FMLA regulations' examples of procedural requirements that employers may impose on employees seeking foreseeable leave.  *See* 29 C.F.R. § 825.302(d) (stating that an employer may require an employee to provide "written notice set[ting] forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave" and to "contact a specific individual" regarding leave).

To be sure, Plaintiff does allege that "Robinson unnecessarily and contrary to law interfered with, restrained, or denied Plaintiff's use or attempted use of FMLA [leave] by delaying the FMLA paperwork from getting to where it needed to be with the DCHR."  Dkt. 40 at 6 (3d Ad. Compl. ¶ 64).  But that allegation is far too conclusory to satisfy the pleading standards under *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678.  Plaintiff herself alleges, moreover, that she did not initiate the process until "June 2019," when she went to Moosally to express her desire to take FMLA leave; that Robinson instructed her to complete the "requisite paperwork" in June 2019; and that she did not ask "Robinson to sign the Employer portion of the

17

FMLA form" until July 29, 2019.  Dkt. 40 at 6 (3d Am. Compl. ¶¶ 59–62).  She then alleges that

she "made a request for FMLA" leave on July 29, 2019, *id.* at 7 (3d. Am. Compl. ¶ 73), and

"memorialized" her "exchange" with Moosally and Robinson "by emailing the completed

FMLA form with the Physician's Medical Facts on August 9, 2019," *id.* at 6 (3d Am. Compl.

¶ 63).  Although Plaintiff asserts in her opposition brief that "[t]here was no reason why the mere

signing of paperwork would take a period of nearly three months," Dkt. 45 at 7, the Court cannot

discern which, if any, allegations in her complaint support her contention that Robinson sat on

the necessary paperwork for three months.  Indeed, the very next clause of Plaintiff's opposition

brief appears to undercut her argument, asserting that the three-month period ran from when she

first contacted Moosally to when "Plaintiff sent further documentation to . . . Robinson." *Id.*  Of

course, any time that *Plaintiff* took to complete the paperwork and to send "further

documentation to . . . Robinson" cannot support a claim of undue delay by *Defendants*.  For

present purposes, however, suffice it to say that the complaint does not provide sufficient detail

to "state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 678.

The Court will, accordingly, grant Defendant's motion to dismiss Plaintiff's FMLA

interference claim.

### 2. *Retaliation Claim*

Finally, Plaintiff amended her complaint to add a retaliation claim under the FMLA.[3]  A

plaintiff may assert a retaliation claim "by alleging an employer discriminated against her for

taking FMLA leave." *Waggle v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir.

2020) (citing 29 U.S.C. § 2615(a)(1)).  FMLA retaliation claims are analyzed under the same

---

[3] Plaintiff's opposition brief cites cases that involved claims under the District of Columbia
Family and Medical Leave Act ("DCFMLA"), D.C. Code §§ 32–501 to 32–517 (2001). *See* Dkt.
45 at 8–9.  Plaintiff's third amended complaint, however, only invokes the FMLA. *See* Dkt. 40.

framework as Title VII retaliation claims: a plaintiff must establish that "(1) the employee 'engaged in a protected activity under this statute'; (2) the employee 'was adversely affected by an employment decision'; and (3) 'the protected activity and the adverse employment action were causally connected.'"  *Gordon*, 778 F.3d at 161 (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000)).  Plaintiff alleges that she was terminated in retaliation for speaking to Robinson on July 29, 2019 about taking FMLA-protected leave and then sending Robinson an email on August 9, 2019, following up on her request.  Dkt. 40 at 7 (3d Am. Compl. ¶¶ 71–74).  Plaintiff received notice of her proposed termination on July 31, 2019, just two days after she asked Robinson to sign the paperwork necessary for her to take FMLA-protected leave.  On October 15, 2019, Defendants acted on the proposal and finalized her termination.  *Id.* (3d Am. Compl. ¶ 74).

In their motion to dismiss, Defendants contend that "Plaintiff fails to plead any facts showing that her termination was causally connected to her protected FMLA activity."  Dkt. 42 at 12.  They argue, in particular, that Plaintiff fails to allege that Gordy was aware of Plaintiff's FMLA activity.  *Id.*  According to Defendants, Gordy's knowledge is essential to Plaintiff's claim because, "[b]y her own telling, Plaintiff was terminated by . . . Gordy."  *Id.*

The Court is unpersuaded.  Contrary to Defendants' suggestion, a plaintiff is not required to allege that a specific supervisor had knowledge of the protected activity to plead an FMLA retaliation claim.  *Cf. Ryan-White v. Blank*, 922 F. Supp. 2d 19, 28–29 (D.D.C. 2013).  At the motion to dismiss stage, it is sufficient for a plaintiff to allege facts supporting a plausible inference of causation, including "by [alleging] a close temporal proximity between the employee's protected conduct and the adverse employment action."  *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 318 (D.D.C. 2015); *see also Thomas*, 227 F. Supp. 3d at 109.

For such an inference to suffice, the protected activity and adverse action must have been "very close" in time. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). No bright line rule has been established as to the meaning of "very close," *cf. Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020), but the Court has generally recognized that a three-month period between the relevant events is the outer limit for establishing temporal proximity. *See Badwal*, 139 F. Supp. 3d at 319 (stating that the acts must occur "within three or four months"); *cf. Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("When relying on temporal proximity alone to demonstrate causation [in Title VII cases], there is no bright-line rule, although three months is perceived as approaching the outer limit."); *Lane v. Vasquez*, 961 F. Supp. 3d 55, 68 (D.D.C. 2013) (stating that "very close" in the Title VII context means "generally less than three months").

Plaintiff's third amended complaint satisfies that test. According to Plaintiff, she submitted the paperwork required to request FMLA-protect leave on July 29, 2019, Dkt. 40 at 6 (3d Am. Compl. ¶ 62), and then, just two days later, she received notice of her proposed termination, *id.* at 7 (3d Am. Compl. ¶ 73). Two and a half months later, Plaintiff's proposed termination was approved and finalized. *Id.* (3d Am. Compl. ¶ 74). These adverse actions were sufficiently close in time to Plaintiff's request for FMLA-protected leave to support an inference of a causal connection.[4] The Court recognizes that Plaintiff's reliance on this temporal

---

[4] To the extent Defendants rely on *Chang v. Institute for Pub.-Private P'ship, Inc.*, 846 A.2d 318 (D.C. 2004), their argument about temporal proximity is misplaced. *See* Dkt. 46 at 4. In *Chang*, the District of Columbia Court of Appeals affirmed summary judgment for the defendant on the plaintiff's DCFMLA claim on the ground that the plaintiff had failed to offer evidence that her employer's stated reason for firing her was pretextual under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chang*, 846 A.2d at 330-32. But, as this Court has explained, although *McDonnell Douglas* dictates that the plaintiff ultimately bears the burden of establishing the elements of a prima facie case of employment

proximity is in some tension with her telling of events, which involves workplace disputes dating back to 2013: a PIP issued in June 2017 and a second PIP issued June 28, 2019 (before she submitted her FMLA request), and a five day suspension in December 2018 (well before she submitted her FMLA request). *See* Dkt. 40 at 3, 5–6 (3d Am. Compl. ¶¶ 15, 39, 51–52).  But a complaint can survive a motion to dismiss even if "recovery is very remote and unlikely," so long as the plaintiff has alleged "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-6.  Here, Plaintiff has cleared that modest hurdle (albeit just barely).

The Court will, accordingly, deny Defendants' motion to dismiss Plaintiff's FMLA retaliation claim.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  As to Count I, the motion is **GRANTED** with respect to Plaintiff's Title VII retaliation claim insofar as it is based on her 2017 EEOC right-to-sue letter, but **DENIED** with respect to Plaintiff's Title VII retaliation claim insofar as it is based on her second EEOC right-to-sue letter.  As to Count II, the motion is **GRANTED**, and that count is **DISMISSED**.  As to Count III, the motion is **DENIED**.  Finally, all claims against Defendant D.C. Alcohol Beverage Regulation Administration are **DISMISSED** with prejudice.

**SO ORDERED.**

---

discrimination, "that burden does not apply with full force at the motion to dismiss stage." *Thomas v. Wash. Metro Area Transit Auth.*, 305 F. Supp. 3d 77, 84 (D.D.C. 2018).  At this stage, a plaintiff must only allege sufficient facts to put the defendant on notice of the nature of her claims, *see* Fed. R. Civ. P. 8(a)(2), and to allow the Court to "draw the reasonable inference" that the defendants is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  Plaintiff has satisfied that standard here.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 16, 2021