UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET FOWLER, *Plaintiff*, v. DISTRICT OF COLUMBIA, *Defendant*. | Civil Action No. 1:18-cv-00634-RDM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

This case stems from Plaintiff's pervasively poor employment performance, and eventual termination from, the District of Columbia Alcohol Beverage Regulation Administration (ABRA). Plaintiff claims that a suspension, the imposition of Performance Improvement Plan (PIP), and her termination were all the product of her complaining of discriminatory treatment. Additionally, Plaintiff asserts that her termination was also a retaliatory action taken in response to applying for FMLA leave.

As explained in detail below, Plaintiff's surviving claims under Title VII (Count I) and FMLA (Count III) are without evidentiary support. The undisputed facts show that 1) Plaintiff failed to exhaust her administrative remedies; 2) Plaintiff cannot prove a prima facie case of Title VII or FMLA retaliation; 3) all adverse actions were taken for non-retaliatory reasons; and 4) Plaintiff cannot prove pretext. Thus, the Court should enter judgment in favor of the District.

## BACKGROUND

Plaintiff Margaret Gordon Fowler is a former employee of the District of Columbia Alcohol Beverage Regulation Administration (ABRA), who worked for ABRA from August 17, 1987, until October 15, 2019.  *See* Statement of Undisputed Material Facts (SUMF) ¶1.  Plaintiff executed an Equal Employment Opportunity Commission (EEOC) charge dated November 30, 2017, wherein she complained about age discrimination.  *See* SUMF ¶ 2.  On March 20 2018, Plaintiff filed her first Complaint in this suit.  *See* Dkt. 1 (Compl.).  ABRA employees Fred Moosally, Director; Sean Gordy, Program Manager; and Camille Robinson, Human Resources (HR) Advisor were made aware Plaintiff filed her March 20, 2018 Complaint on April 27, 2018.  *See* SUMF ¶ 3.  On November 5, 2018, Plaintiff replied to a "Notice of Proposed Suspension" that "advised on specific dates in September and October [she] arrived late for [her] tour of duty."  *See id*. ¶ 4.  Plaintiff concedes that she was occasionally late for her tour of duty.  *See id*. ¶ 5.

On June 25, 2019, Sean Gordy signed a Notice and Imposition of a Performance Improvement Plan and Disciplinary Action (2019 PIP), after management found Plaintiff "continue[d] to display a blatant disregard for performance and relevant. . . goals."  *See id.* ¶ 6.  The 2019 PIP detailed five performance deficiencies outlining where Plaintiff was not performing adequately.  *See id*. ¶¶ 7-12.  Under each category, the PIP outlined the ways in which Plaintiff had failed to adequately or timely submit her work, failed to properly comply with agency procedures, failed to engage appropriately with ABRA customers, or failed to remedy her deficiencies when given the opportunity to do so.  *See id*.  After the imposition of the 2019 PIP, Licensing Officer Karen Jackson met with Plaintiff on several occasions to walk

through Plaintiff's 2019 PIP, discuss Plaintiff's continued substandard work, and outline ABRA's expectations and suggestions on how Plaintiff could improve. *See id.* ¶¶ 14-19.

On July 31, 2019, Sean Gordy signed a notice of proposed termination, which stated the reason for removal was Plaintiff's "failure to meet the requirements of [her] PIP, to carry out [her] responsibilities as a Licensing Specialist, as well as [her] failure to assist ABRA customers, and the undue delay in completing [her] assigned caseload." The termination letter also detailed several performance deficiencies that Plaintiff failed to address after the imposition of her 2019 PIP. *See id*. ¶¶ 20-22. Although Plaintiff admits she was terminated on the basis of the 2019 PIP, *see id*. ¶ 23, on August 1, 2019, Plaintiff filed a charge with the D.C Office of Human Rights which was cross-filed with the EEOC, stating she was discriminated against in retaliation for complaining in violation of Title VII of the Civil Rights Act of 1964. *See id*. ¶ 24. The 2019 charge did not mention her 2018 suspension, the 2019 PIP, or her 2019 notice of termination, but instead discussed the labeling of her files, her disability, and her workload. *See id*. ¶¶ 25-26. Plaintiff submitted a request for leave under FMLA to ABRA Human Resources Advisor Camille Robinson on August 9, 2022. *See id*. ¶ 27.

Since filing her initial Complaint, Plaintiff has subsequently filed three amended complaints, refining and updating her claims. *See* Dkt. 1 (Compl.); Dkt. 23 (Am. Compl.); Dkt. 33 (Second Am. Compl.); Dkt. 40 (Third Am. Compl.). In response, the District has filed three motions to dismiss Plaintiff's claims. *See* Dkt. 24 (Mot. to Dismiss Am. Compl.); Dkt. 34 (Mot. to Dismiss Second Am. Compl.); Dkt. 42 (Mot to Dismiss Third Am. Compl.). Following the Court's ruling on the District's motion to dismiss Plaintiff's third amended complaint, two claims remain:  1) Title VII retaliation for events after October 5, 2018; and 2) FMLA retaliation. *See* Dkt. [48] (Ord.).

**LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "[s]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party in a motion for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once a movant has made this initial showing, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In other words, "once the movant has supported a summary judgment motion by evidence of particular events, the court may properly look to the nonmovant for rebuttal evidence either 'from persons familiar with the events,'" or require "the nonmovant to 'otherwise cast more than metaphysical doubt on the credibility of the testimony.'" *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir.1993) (quoting *Bias v. Advance Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir.1990)). A trial court should enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

**ARGUMENT**

I. **Plaintiff Failed to Exhaust Her Administrative Remedies For Alleged Acts of Retaliation So Her Title VII Retaliation Claim Fails.**

Before filing a lawsuit under Title VII, "a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged

unlawful employment practice.  If the complainant has first instituted proceedings with a state or local agency, the limitations period is extended to 300 days." *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016); *see Ashraf–Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 170 (D.D.C. 2012); *Gordon v. District of Columbia*, 605 F. Supp. 2d 239, 244 (D.D.C. 2009).  Moreover, each new discrete retaliatory or discriminatory act gives rise to an employee's obligation to file charges before the EEOC.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-111 (2012).  Only claims that are contained in the administrative complaint or that are "like or reasonably related" to the allegations of the administrative complaint can be raised in a Title VII lawsuit.  *See Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995).  And the "the requirement of some specificity in a charge is not a mere technicality."  *Id*. (*citing Rush v. McDonald's Corp*., 966 F.2d 1104, 1111 (7th Cir.1992) (internal quotation marks omitted)).  Additionally, "a person aggrieved under Title VII who seeks to file a civil action must do so within ninety days from receipt of the EEOC right-to-sue notice."  42 U.S.C. § 2000e–5(f)(1); *Griffin v. Acacia Life Ins. Co.*, 151 F. Supp. 2d 78, 80 (D.D.C. 2001).

    A.    **<u>Plaintiff's Suspension and Termination Fall Outside the Identified Timeframe.</u>**

Plaintiff failed to exhaust her administrative remedies for her 2018 suspension and 2019 termination because these actions fall outside the date range identified by Plaintiff in her 2019 EEOC charge.  In the 2019 EEOC charge, Plaintiff noted that she filed a previous EEOC charge—the charge executed on November 30, 2017—and stated she was retaliated against for "complaining in violation of Title VII."  *See* SUMF at ¶ 24.  However, her 2019 EEOC charge specifically notes the date range of January 22, 2019, to June 25, 2019.  *See id*.  Because the November 2, 2018 proposed suspension and July 31, 2019 proposed termination occurred

outside of the timeframe provided in the 2019 EEOC charge, Plaintiff failed to exhaust her administrative remedies as to these adverse actions and the Defendant is entitled to judgment on those claims. *See id.*; *Park*, 71 F.3d at 907 (noting that specificity requirement is not a mere "technicality.").

**B.    The 2019 EEOC Charge Fails to Substantively Identify the Suspension, PIP, or Termination.**

In her 2019 EEOC charge, Plaintiff fails to adequately identify her November 2018 proposed suspension, her June 2019 PIP, or her 2019 notice of termination, all of which occurred before her filing of the EEOC charge. *See* SUMF ¶ 25. Rather, her listed grievances include issues with the labeling of her files, her disability, and her workload. *See id.* ¶ 26. The only mention of Title VII retaliation, in addition to several other laws haphazard references in her charge, is a vague sentence baldly stating she was retaliated against in violation of that provision. *See id.* ¶ 24. Accordingly, as none of the adverse actions—the 2018 suspension, 2019 PIP, and 2019 termination—are specifically identified in her EEOC charge, Plaintiff has failed to exhaust her administrative remedies as to those actions, and the District is entitled to judgement on those claims. *See Park*, 71 F.3d at 907 907 (noting that specificity requirement is not a mere "technicality.").

**II.    Plaintiff Cannot Prove A Prima Facie Case of Retaliation Under Either FMLA (Count III) or Title VII (Count I).**

"To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) she engaged in activity [a] protected [activity]; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006) (citations omitted); *see McGrath v. Clinton*, 666 F.3d 1377, 1380 n.3 (D.C. Cir. 2012) (explaining that a plaintiff must ultimately

6

prove to prevail in her case.); *see also Thomas*, 227 F. Supp. 3d at 100 n. 4 ("Although *Brady* and other cases cited below involve claims arising under Title VII, the D.C. Circuit has held that the 'analytical framework for [a] claim of retaliation' under FMLA is 'the same as that applicable to a claim of discrimination under Title VII.'") (citation omitted).

    A.    **Plaintiff's FMLA Retaliation Claims Fails For Lack of Causation.**

While causation can be supported by a temporal proximity, *see Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000), it can also be discredited by evidence refuting such a claim, *see Roberts v. Segal Co.*, 125 F. Supp. 2d 545, 550 (D.D.C. 2000). For instance, when a defendant's initiation of a plaintiff's termination predates the plaintiff's alleged protected activity, "[her] retaliatory claim is illogical and must be dismissed." *Carter v. Greenspan*, 304 F. Supp. 2d 13, 30 (D.D.C. 2004) (citing *Trawick v. Hantman*, 151 F. Supp. 2d 54, 63 (D.D.C. 2001), aff'd, No. 01–5309, 2002 WL 449777 (D.C. Cir. Feb 21, 2002)).

In Count III, Plaintiff claims she was terminated because she requested FMLA leave. *See* Dkt. 40 at 7 (Third Am. Compl. ¶¶ 69-75). Plaintiff's supervisor, Sean Gordy, signed her termination notice on July 31, 2019. SUMF ¶ 20. Plaintiff, however, did not request FMLA leave until she filed her paperwork with Human Resources on August 9, 2019. *See id.* ¶ 27. Because she did not request leave under FMLA until after she was notified of the decision to terminate her employment, her FMLA retaliation claim fails for lack of causation. *See Trawick*, 151 F. Supp. 2d at 63 ("Because the termination process had already been initiated, following on

the heels of repeated warnings and progressive disciplinary actions, no reasonable juror could conclude that the termination had been caused by [subsequent protected activity.]").

  **B.**   <u>**Plaintiff Cannot Prove Any Adverse Action Were Causally Related to Her Protected Activity, So Her Title VII Claim (Count I) Fails.**</u>

  Even if the Court finds that Plaintiff's Title VII claim survives the exhaustion argument in Section I above, her claim fails for lack of causation. Assuming Plaintiff's EEOC charge encompasses her November 2, 2019 proposed suspension, her June 25, 2019 Performance Improvement Plan, and her July 31, 2019 proposed termination, her Title VII claim still fails because she cannot prove a causal link between these employment actions and a protected activity.

  Plaintiff complains about activities that took place between 2013 and March 20, 2018. *See* Dkt. [40] at 5 (Third Am. Compl. ¶¶ 39-46). Unfortunately for Plaintiff, the two temporally closest dates, the March 20, 2018 filing of her Complaint, and November 2, 2018 notice of proposed suspension, are nearly seven months apart. *See* SUMF ¶ 4; *see generally* Dkt. 40 (Third Am. Compl.). This gap doubles what is recognized as the outer limit for temporal proximity to establish causation between a protected activity and an adverse employment action. *See Willingham v. Gonzales*, 391 F. Supp. 2d 52, 61 (D.D.C. 2005) (stating that the court follows the "three-month rule" for causation on the basis of temporal proximity.). Even considering the date when her supervisors became aware of Plaintiff's filed Complaint, April 27, 2018, this date is still almost six months before the November 2, 2019 notice and therefore still too temporally tenuous to establish a claim. *See* SUMF ¶ 3. Without more, this gap is too long to establish

causation for any of the alleged adverse employment actions.  *See Willingham* 391 F. Supp. 2d at 61.

Finally, with respect to the last of alleged protected activities—the filing of the August 1, 2019 EEOC charge—Plaintiff cannot establish she was suspended, placed on a PIP, or terminated in retaliation for filing this charge.  This charge post-dates the District's initiation of termination proceedings, which began on July 31, 2019.  *See* SUMF ¶¶ 4, 6, 21.  Law and common sense prescribe that when a protected activity *follows* an adverse employment action, that protected activity cannot be the cause of the adverse action.  *See Carter v. Greenspan*, 304 F. Supp. 2d 13, 30 (D.D.C. 2004) (citing *Trawick v. Hantman*, 151 F. Supp. 2d 54, 63 (D.D.C. 2001), *aff'd*, No. 01–5309, 2002 WL 449777 (D.C .Cir. Feb 21, 2002)).  The Court should therefore enter judgment for the District on Count I.

### III. Plaintiff's Claims Fail Because the District Had Legitimate, Non-Retaliatory Reasons for Any Adverse Action and No Record Evidence Establishes the District's Rational was Pretextual.

Even if the Court determines that Plaintiff can prove a prima facie case of Title VII or FMLA retaliation, the District is nonetheless entitled to judgment because any adverse action was taken for non-retaliatory reasons.  When analyzing a Title VII or FMLA retaliation claim, courts apply the framework set out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Thomas,* 227 F. Supp. 3d at 99 (citation omitted).  In the absence of direct evidence of retaliation, as in this case, retaliation claims are subject to the *McDonell Douglas* three-step burden-shifting framework.[1]  Under this framework, a plaintiff must first establish a prima facie

---

[1] "Direct evidence of discrimination is evidence that if believed by the fact finder proves the particular fact in question *without any need for inference* . . . [D]irect evidence includes any statement or written document showing a discriminatory motive *on its face.*" *Davis v. Ashcroft,* 355 F. Supp. 2d 330, 340 n. 2 (D.D.C. 2005) (emphasis in original).

9

case of retaliation; the defendant is then required to rebut the presumption of unlawful retaliation by offering a legitimate, non-retaliatory reasons for its actions; and finally, the plaintiff is provided an opportunity to prove the inadequacy of the defendant's rebuttal by proving that the stated basis is not the actual reason but merely pretext for retaliation. *McDonell Douglas,* 411 U.S. at 802-05. The employer's burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "Showing pretext, however, requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F. 3d 226, 272 (D.C. Cir. 2014). The court looks to the totality of the circumstances to assess whether discrimination could be inferred from the plaintiff's *prima facie* case, any evidence the plaintiff presents to attack the employer's explanation, and any other evidence of discrimination available to the plaintiff. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289-91 (D.C. Cir. 1998).

    A.    **The District Had Numerous Legitimate, Non-Retaliatory Reasons for the Adverse.**

The record is clear that ABRA had numerous legitimate, non-retaliatory reasons for suspending Plaintiff, imposing a PIP, and terminating Plaintiff.

    1.    **The November 2018 Suspension**

For the November 2018 suspension, ABRA's reasoning for the suspension of Plaintiff was her repeated tardiness in the months of September and October. *See* SUMF ¶ 4. Indeed, Plaintiff herself does not contest that she was late for her tour of duty. *Id.* ¶ 5. Thus, the District had legitimate, non-retaliatory reasons for Plaintiff's November 2018 suspension.

    2.    **The June 25, 2019 PIP**

Plaintiff was placed on a PIP in June 25, 2019, for continuously flouting ABRA policies and procedures. *See id.* ¶ 6. The PIP detailed five overarching performance categories for

10

placing her on this improvement plan. *See id.* ¶¶ 7-11. The first category covered Plaintiff's failure to submit case work to management in a timely manner, including to meet deadlines for for the licensing agenda resulting in customer delays and the failure to promptly produce placard notifications and provide them to relevant staff for review. *See id.* ¶ 7. The next category identified Plaintiff's failure to comply with filing and record management procedures, such as failing to respond to management staff and applicant requests to access files; failing to promptly create folders when cases were assigned to her; and failing to file papers according to ABRA Filing System Guidelines, adopted by the Licensing Division Supervisor. *See id.* ¶ 8. The 2019 PIP's next category dealt with Plaintiff's interaction with ABRA customers—stating that she failed to timely notify customers that she was assigned to their case; failed to timely respond to internal and customer emails and voicemail messages; failed to provide clear and detailed communications when sending internal and external emails; and failed to timely provide draft and supporting documents for placard notices. *See id.* ¶ 9. Additionally, the 2019 PIP identified Plaintiff's failure to properly input data into the ABRA case management system; failure to correct errors and ignored repeated requests from management to do so; failure to accurately update records in a timely fashion; and failure to upload required documents to the case management system. *See id.* ¶ 10. The final performance deficiency of the 2019 PIP was Plaintiff's failure to timely submit monthly reports, and accompanying documents, to management, and her failure to promptly correct errors in the ABRA case management system identified in the monthly review of licensing issuance reports. *See id.* ¶ 11.

 For each of these categories, the 2019 PIP, and the follow up emails from Karen Jackson, clearly delineate Plaintiff's continual, woefully subpar performance and communications from clients and management, demonstrating Plaintiff's failures. *See id*. ¶¶ 14-19. Moreover, as

11

Plaintiff admits herself, she failed to timely communicate with clients and was aware of complaints from clients about the timeliness of tasks, such as placard generation. *See id.* ¶¶ 12-13.

### 3. Plaintiff's Termination

Plaintiff's eventual termination from ABRA—a decision that was made *before* she filed her August 2019 EEOC charge—was for failing to meet the requirements of her PIP, failing to execute her responsibilities, failing to assist ABRA customers, and the undue delay in completing her assigned work. *See id.* ¶¶ 21-22. The termination notice goes into further detail as to the specific failures under the categories identified in the 2019 PIP. *See id.* ¶ 22. And Plaintiff admits that she was terminated on the basis of her 2019 PIP. *See id.* ¶ 23.

\* \* \*

As demonstrated by the record, ABRA had numerous legitimate, non-retaliatory reasons for the adverse actions taken against Plaintiff.

### B. **Plaintiff Cannot Prove Pretext.**

Given the District's legitimate, non-retaliatory reasons for each of the adverse actions, the burden shifts to Plaintiff to show pretext. "Showing pretext, however, requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F. 3d 226, 272 (D.C. Cir. 2014). The court looks to the totality of the circumstances to assess whether discrimination could be inferred from the plaintiff's *prima facie* case, any evidence the plaintiff presents to attack the employer's explanation, and any other evidence of discrimination available to the plaintiff. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289-91 (D.C. Cir. 1998). In other words, could a reasonable jury infer that the District's given reason was pretextual, and if so, could the jury infer that this pretext shielded discriminatory motives? *See Murray v. Gilmore*,

406 F.3d 708, 713 (D.C. 2005).  Ultimately, Plaintiff must demonstrate by a preponderance of the evidence that the District's actions were "more likely than not" based on her protected activity or requesting leave under FMLA.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  "The use of comparator evidence is the most commonly employed method of demonstrating that an employer's explanation is pretextual." *Cienfuegos v. Office of Architect of the Capitol*, No. 13-cv-757 (JEB), 2015 WL 13653872, *9 (D.D.C. April 1, 2015), quoting 1 Lex K. Larson, Employment Discrimination § 8.04, at 8-66 (2d ed. 2007).  Here, there is no comparator, or other record evidence, sufficient to prove pretext.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's Motion for Summary Judgment.

Date:  October 28, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Alicia M. Cullen*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ James A. Wiley*
ALEX KARPINSKI [982184]
JAMES A. WILEY[*]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 442-9866; (202) 735-7564

---

[*] Admitted to practice only in the State of California.  Practicing in the District of Columbia under the direct supervision of Alicia Cullen, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

Fax:  (202) 715-7725; (202) 715-7715
Email:  alex.karpinski@dc.gov; jim.wiley@dc.gov

*Counsel for Defendant District of Columbia*