UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARGARET FOWLER,

    Plaintiff,

    v.                                      Case No.: 1:18-cv-00634-RDM

DISTRICT OF COLUMBIA,

    Defendant.

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff has shown that she exhausted administrative remedies, and that she has established a Title VII and FMLA retaliation claim, and the Defendant has failed to provide a legitimate, non-retaliatory reason for suspending Ms. Fowler, or for imposing a Performance Improvement Plan (PIP), or for terminating her. Defendants have also failed to provide any reasons at all for all of the other adverse employment actions taken against Ms. Fowler. Further, Defendants fail to raise any arguments against her claims of interference with her FMLA, therefore such argument has been waived. Further, Ms. Fowler's termination has already been determined wrongful and the Defendant was already Ordered on August 26, 2021 to reverse her termination and permit Ms. Fowler to retire effective February 6, 2020. On August 26, 2021, an Opinion and Order on the Petition for Review was issued in OEA Matter No. 1601-0006-20; Margaret Fowler v. Alcoholic Beverage Regulation Administration ("ABRA" or "Agency"), which ordered the Agency to reverse Plaintiff's termination and permit her to retire effective February 6, 2020 because the PIP was in violation of DPM §1410.2 and § 1410.3.

1

Defendant knows this and continues to claim throughout their summary judgment that Plaintiff was terminated and continues to refer to the PIP as support for their reasons of treating Plaintiff the way that she was treated. There are many disputed facts surrounding the issues raised in this action including whether Plaintiff faced retaliation for filing her EEOC charges, reporting the wrongful harassment and treatment, filing the complaint in this instant action and for requesting FMLA leave.

## BACKGROUND

Ms. Fowler held her position with ABRA from August 1987 until her wrongful termination in 2019. Beginning in 2016, Plaintiff began to experience physical assault, harassment, negative treatment, and unfair treatment by her supervisors. See ECF Doc 40 at 2 ¶ 9-12 and at 5 ¶ 39-42; also see Def. Ex. E at 51 (Fowler Dep. at 218:10-22; 219:1-11. This treatment included but was not limited to the removal of documents from her desk, failure to provide explanations to Plaintiff, overseeing Plaintiff's work, mistreating Plaintiff and filing false reports against her, preventing her from signing in timely and then accusing her of being late, mischaracterizing her, disregarding her verbal complaints of mistreatment, treating younger employees more favorably, screaming and physically threatening Plaintiff, and her male supervisor physically assaulted her by shoving her into a door. See Id. She was also denied opportunities for promotions and denied leave and put on suspension. Id. at 3 ¶ 22; See ECF Doc 58-4, Def. Ex. B at 2-4.

After filing this instant complaint, Plaintiff continued to suffer a series of acts in retaliation to her EEOC charges (Charge #570-2018-00225) and complaints made against the Agency, and she filed another EEOC charge (#570-2019-02762) mentioning the retaliation she faced after her Charge #570-2018-00225 and her request for accommodations and FMLA. See

ECF Doc 58-13, Def. Ex. K at 2-3. Ms. Fowler then filed a Third Amended Complaint on December 11, 2020, outlining the continued retaliation she suffered.

Ms. Fowler complained that her FMLA was interfered with and she was retaliated against for reporting her unfair and negative treatment at work due to her age and requests for FMLA. After a series of retaliation and unfair treatment, Plaintiff was ultimately then actually wrongfully terminated from her position with ABRA on October 15, 2019. This was overturned by an Administrative Judge at the OEA in March 11, 2021 and affirmed by the Board August 26, 2021. Despite how Defendants try to paint this picture, it should be clearly noted that the November 2019 complaint was not Plaintiffs first and only protected activity as mentioned above and will be further discussed below.

After receiving her right to sue on her 2017 EEOC Charges and filing this action in March 2018, the case underwent the natural course of civil procedure. As the year went on, Ms. Fowler's health continued to decline. In the beginning of June 2019, Plaintiff went to Mr. Moosally regarding her desire to use FMLA to recuperate and undergo a procedure for her disability. (See ECF Doc 40 at 6 ¶ 59; and see Def. Ex. E at 51 (Fowler Dep. At 189:1-22; 190:1-22; 191:1-22; 192:1-14.) She was denied leave, and denied accommodations for her disability. Then, on July 19, 2019, Ms. Fowler emailed her intent to retire effective February 2020. On July 31, 2019, Agency issued Employee a Notice of Proposed Removal based on her failure to successfully complete a Performance Improvement Plan ("PIP"). Rather than approve FMLA or wait for her retirement, Defendants opted to ignore any mitigating factors or lesser penalty options and instead terminated her in October 2019.

She filed a grievance for appeal with the OEA on November 14, 2019, which overturned the termination and ordered she be permitted to retire. In the Opinion and Order on the Petition

3

for Review issued in OEA Matter No. 1601-0006-20, the Board overturned her termination and held: "Accordingly, we believe that the AJ's analysis of the imposed penalty was based on a consideration of the relevant factors. The AJ held that Agency failed to properly consider Douglas factor eleven, mitigating circumstances surrounding the offense. She noted that Employee's health, her request to take leave under the Family Medical Leave Act ("FMLA"), in addition to Employee's intent to retire, all served as mitigating circumstances that would warrant the selection of a penalty other than termination. We find that Employee's request to retire in February of 2020 was made voluntarily and without undue influence. Employee requested to retire prior to the issuance of the proposed adverse action; however, Agency outright failed to respond to her correspondence." See Pl. Exhibit "A", the August 26, 2021 Opinion an Order on Petition for Review.

Further, Defendant's issued Plaintiff a termination notice outlining their reasoning for termination, which was based on their evaluation of her "continued failure to meet the goals outlined in Plaintiff's 2019 PIP". See Def. SUMF ¶ 21. However, because her termination was based on her failure to perform PIP requirements, and the PIP requirement was actually determined wrongful by the OEA and to be in violation of DPM §1410.2 and § 1410.3, her termination, therefore was wrongful, as well. See Pl. Exhibit "A" at 10-11. "As a result, Agency's termination action must be reversed." Id.

Plaintiff filing her charges with the EEOC on December 6, 2017 and this instant action on March 20, 2018, and filing with the D.C. Office of Human Rights August 1, 2019 are all instances of protected activities that are casually connected to the adverse actions she subsequently suffered.

**LEGAL STANDARD**

The standard for Summary Judgment set forth in Rule 56 provides that the summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact…" ."*Celotex Corp.,* 477 U.S. at 324,106 S.Ct. 2548. (1986).  "A genuine issue of material fact exists 'if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the nonmoving party.'" *Hairston v. Vance-Cooks*, 773 F.3d at 271 (2014) (quoting *Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202, 248 (1986)).

**ARGUMENTS**

**I.     Plaintiff has Exhausted her Administrative Remedies.**

Plaintiff filed charges with the EEOC in 2017 (see ECF Doc 58-4, Def. Ex. B) and upon receipt of her right to sue she timely filed this instant action on March 20, 2018 (See ECF Doc 1). Prior to her EEOC charges as well as between 2017 until her termination in 2019, she also reported verbally on multiple occasions and she also to the union. In September 2017 the Union instructed that all negative documents placed in Plaintiff's personnel folder be removed and her leave be restored. See ECF Doc 40 at 3 ¶ 14, 19, 41, 42, 44. She also filed with the D.C. Office of Human Rights August 1, 2019 (see ECF Doc 58-13, Def. Ex. K); and her grievance with the OEA on November 14, 2019, and lastly her Third Amended Complaint on December 11, 2020, in this instant action.

All of the events and treatment Ms. Fowler suffered are raised in the administrative complaints and/or "like or reasonably related" to the allegations she has raised in her various reports and filings. See *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995). The issues related to and addressed in Plaintiff's claims are not simply limited to her PIP, suspension and termination, as listed in Defendant's Motion for Summary Judgement. There were many other instances of retaliatory conduct, adverse actions and harassment against Ms. Fowler.

There are disputed facts as to whether the treatment and adverse actions taken against Plaintiff constituted interference and retaliation. This treatment included but was not limited to the removal of documents from her desk, failure to provide explanations to Plaintiff, overseeing Plaintiff's work, mistreating Plaintiff and filing false reports against her, preventing her from signing in timely and then accusing her of being late, mischaracterizing her, disregarding her verbal complaints of mistreatment, treating younger employees more favorably, screaming and physically threatening Plaintiff, and her male supervisor physically assaulted her by shoving her into a door. See Id. She was also denied opportunities for promotions and denied leave and put on suspension. Id. at 3 ¶ 22; See ECF Doc 58-4, Def. Ex. B at 2-4. Defendants are attempting to skim over all of these other acts and solely focus on the wrongful placement of the PIP and termination, which were also adverse actions taken against Plaintiff but did not occur until last, which is why they were not listed on her initial EEOC complaint. However, they were reported and addressed in her later filed grievances in 2019. The Court cannot ignore all of the prior grievances and reports Plaintiff made about all of the adverse actions and retaliatory conduct that occurred from 2015 onward.

"[T]he standard for deciding whether [a] plaintiff[ ] exhausted [her] administrative remedies is whether the theory actually relied on at trial was 'like or reasonably related to the

allegations of the EEOC charge.' " *Ivey v. District of Columbia,* 20 A.2d 607 (D.C. 2008) quoting *Gibbs v. Pierce County Law Enforcement Support Agency*, 785 F.2d 1396, 1400 (9th Cir.1986) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984)). "The EEOC charge does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." Id. quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir.1990) (internal quote marks and citations omitted). Here, Ms. Fowler asserts in her complaints several examples of the issues she was experiencing. She lists several examples in her EEOC Charges, including the removal of her files, receiving no explanations for removals, overseeing her work, having to work late without compensation, verbal abuse, physical assault, treating younger employees more favorable, denying leave, being wrongfully placed on PIP, denying promotional opportunities and giving them to younger employees, denying accommodations, and experiencing retaliation. See ECF Doc. 58-4, Def. Ex. B at 2-4; and ECF Doc. 58-13, Def.'s Ex. K at 2-3. Her termination was not listed on this charge because it did not occur until afterwards, in October 2019. The suspension and termination are directly related to the PIP, as the PIP was the bases for the wrongful suspension and termination. All of the occurrences listed in the EEOC charges, grievances, and her federal complaints are "like or reasonably related". *Ivey,* 20 A.2d 607; *Gibbs*, 785 F.2d 1396, 1400.

    **II.**    **FMLA and Title VII Retaliation**

There are genuine issues of material fact as to whether Complainant was subject to an adverse employment action and whether a causal connection exists between the adverse action and the protected activity. The elements of retaliation under the FMLA are that the employee engaged in a protected activity; the employee was adversely affected by an employment

decision; and the protected activity and the adverse employment action were causally connected." See *Holcomb v. Powell,* 433 F.3d 889, 901-02 (D.C. Cir. 2006). The D.C. Circuit has held that the 'analytical framework for a FMLA retaliation claim is the same as one for Title VII. Id.; *Thomas v. District of Columbia*, 227 F. Supp. 3d 88 (D.D.C. 2016).

Here, as described herein and above, Plaintiff has presented facts to show that she engaged in several protected activities – to include applying for FMLA leave for her disability, and reporting Title VII violations to the EEOC and filing grievances and making oral complaints, as well as filing her Complaint in this instant action on March 20, 2018.

Beginning in 2016, Plaintiff began to experience physical assault, harassment, negative treatment, and unfair treatment by her supervisors. See ECF Doc 40 at 2 ¶ 9-12 and at 5 ¶ 39-42; also see Def. Ex. E at 51 (Fowler Dep. at 218:10-22; 219:1-11. This was reported several times.

Plaintiff then also presented facts to show that after engaging in such protected activities she was then treated very poorly, was refused accommodations, harassed, physically assaulted, denied leave for her husband's funeral, denied promotions, had files removed from her desk, was screamed at, her supervisor began directly watching over her shoulder while she worked, she was asked to do additional tasks, had her verbal complaints ignored, had her character questioned, was stopped from timely signing into work and then reprimanded from not signing in on time, had her request for retirement completely ignored, was given an unfair and unwarranted PIP, received unfair and harsher penalties, placed on suspension based on the PIP, and terminated in October only a few short weeks after noticing her intent to retire in February. See ECF Doc 40 at 2 ¶ 9-12 and at 5 ¶ 39-42; also see Def. Ex. E at 51 (Fowler Dep. at 218:10-22; 219:1-11.

In the beginning of June 2019, Plaintiff went to Mr. Moosally regarding her desire to use FMLA to recuperate and undergo a procedure for her disability. (See ECF Doc 40 at 2 ¶ 9-12 and

at 5 ¶ 39-42 and at 6 ¶ 59; and see Def. Ex. E at 51 (Fowler Dep. At 189:1-22; 190:1-22; 191:1-22; 192:1-14.) Then, on July 19, 2019, Ms. Fowler emailed her intent to retire effective February 2020. As Defendants explained, then only twelve days later, "Plaintiff's supervisor, Sean Gordy, signed her termination notice on July 31, 2019." See ECF Doc. 58-1 at 7 (Def. Memorandum […] in Support of [their] Motion for Summary Judgment). Causation is commonly supported by temporal proximity. *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000). As explained above, Defendants have continued to display adverse employment actions against Plaintiff every time she exercises a protected activity.

After filing her EEOC charges (Charge #570-2018-00225) and complaints against the Defendant, Ms. Fowler filed another EEOC charge (#570-2019-02762) mentioning the retaliation she faced because of and after her Charge #570-2018-00225 and because of and after her request for accommodations and FMLA. See ECF Doc 58-13, Def. Ex. K at 2-3.

There is a casual connection between her protected activity and the adverse employment actions taken by her supervisors immediately after. Defendants attempt to disregard and overlook all of the adverse employment actions and retaliatory acts taken against Ms. Fowler and only address the PIP, suspension and termination in their Motion for Summary Judgment. Those last three acts were only the final retaliatory acts taken against Ms. Fowler as this case has been pending for many years in District Court, and this Court should not dismiss those issues Ms. Fowler has been addressing since the initiation of her claims. Further, Defendant failed to even address those other allegations in their Motion for Summary Judgement, and thus they must remain.

The Defendants have presented no legitimate, non-retaliatory reason or explanation for

their adverse employment actions. For example, Plaintiff asserts that after filing her EEOC charge and requesting FMLA leave, she was treated very poorly, was refused accommodations, harassed, physically assaulted, denied leave for her husband's funeral, denied promotions that were awarded to younger employees, had files removed from her desk, was screamed at, her supervisor began directly watching over her shoulder while she worked, she was asked to do additional tasks, had her verbal complaints ignored, had her character questioned, she was stopped from timely signing into work and then reprimanded from not signing in on time, had her request for retirement completely ignored, and received unfair and harsher penalties than her younger co-workers. See ECF Doc 40 at 2 ¶ 9-12 and at 5 ¶ 39-42; also see Def. Ex. E at 51 (Fowler Dep. at 218:10-22; 219:1-11. They have also failed to provide any legitimate, non-retaliatory reason or explanation for wrongfully 2018 suspension and for implementing the 2019 PIP. Plaintiff has repeatedly explained and also provided in a response to her 2018 suspension that she was in fact NOT tardy and it was because her supervisors were preventing her from signing in by requiring her to do additional duties as she entered. Last, Defendants totally failed and neglected to explain any reason for subjecting Plaintiff to much harsher penalties than necessary and much harsher penalties than those issued against youngers employees. It is absolutely a disputed fact as to whether the adversary actions taken prior, along with the suspension, PIP, and wrongful termination were retaliatory and any reasonable jury could find pretext as it is more likely than not these actions were based on her protected activity and requesting FMLA leave because for approximately 30 years - from 1987 until these occurrences began - Plaintiff was considered an outstanding employee and "valued performer". Therefore, summary judgment is not appropriate for these issues and they should be left to the trier of facts.

### IV.     FMLA Interference

The Defendants have not raised any arguments in their motion to dismiss as it relates to Plaintiff's claims of FMLA Interference. To prevail under a claim of interference under FMLA, it must be shown that, " ... [the plaintiff's] employer interfered with, restrain[ed], or denied the exercise of or attempt to exercise, any right provided by the FMLA and that [plaintiff's] were prejudiced thereby." See *Gordon v. US. Capitol Police*, 414 U.S. App. D.C. 204,210 (2015). To prevail, the plaintiff must show that she was (1) eligible; (2) her employer was covered; (3) she was entitled to take leave; (4) she provided sufficient notice of intent; and (5) her employer denied her FMLA benefits. *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 217 (D.D.C. 2016).

Plaintiff has presented facts in her Complaint to support her second claim and the Defendants have not disputed such in their motion for summary judgment, therefore, this claim should remain.

### CONCLUSION

The Supreme Court has consistently emphasized that "at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Plaintiff has provided evidence supporting that there is a genuine issue of material fact as to whether Plaintiff was retaliated against for filing multiple EEOC complaints and grievances, requesting FMLA leave and retirement and because she filed this lawsuit in 2018.  Further, it is disputed as to which adverse employments actions taken by Defendant are casually connected to her protected activities. It is further disputed that she suffered harsher penalties and was denied opportunities that were

afforded to her younger co-workers. It is also already decided by OEA ( Matter No. 1601-0006-20) that the PIP and termination were wrongful. Issuing the PIP is a clear example of the continued retaliation and adverse employment actions Ms. Fowler continued to suffer. Defendants continue to refer to the PIP and termination in their arguments, ignoring the fact that they were ordered to reserve and permit Ms. Fowler to retire. The other disputes related to those issues is whether the PIP, suspension, and termination were in retaliation to the other charges and complaints filed by Plaintiff, and Plaintiff has presented many facts that support that this was retaliatory and any reasonable jury could agree. As mentioned above, these were only the last adversary actions against Ms. Fowler, and Defendant has not addressed or offered any legitimate reasons for any of the other conduct mentioned herein, or offered their clear explanation as to why they ignored Ms. Fowler's repeated explanations of how she was NOT in fact tardy, should never have been suspended or put on PIP, and should never have had her FMLA interfered with and ignored. Even if the Court was to find that the PIP and termination were not in retaliation, there is a long list of other adversary employment actions taken by Defendant against Plaintiff that have been presented herein and are supported by the evidence and record.

      The determination of these facts will most certainly affect the outcome of the case therefore, summary judgment against the Plaintiff is not appropriate in this matter. Entering the suspension, PIP,