Notice:  This decision may be formally revised before it is published in the *District of Columbia Register* and the Office of Employee Appeals' website.  Parties should promptly notify the Office Manager of any formal errors so that this Office can correct them before publishing the decision.  This notice is not intended to provide an opportunity for a substantive challenge to the decision.

# THE DISTRICT OF COLUMBIA

## BEFORE

## THE OFFICE OF EMPLOYEE APPEALS

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| EMPLOYEE[1] ) | |
| ) | OEA Matter No. 1601-0006-20 |
| v. ) | |
| ) | Date of Issuance: August 26, 2021 |
| ALCOHOLIC BEVERAGE ) | |
| REGULATION ADMINISTRATION, ) | |
|     Agency ) | |
| ) | |

OPINION AND ORDER
ON
PETITION FOR REVIEW

Employee worked as a Licensing Specialist with the Alcoholic Beverage Regulation Administration ("Agency"). On July 31, 2019, Agency issued Employee a Notice of Proposed Removal based on her failure to successfully complete a Performance Improvement Plan ("PIP") in accordance with Chapter 6, Section 1410 of the D.C. Municipal Regulations ("DCMR"). Agency issued its Final Notice of Removal on October 15, 2019. The effective date of Employee's termination was October 25, 2019.

Employee filed a Petition for Appeal with the Office of Employee Appeals ("OEA") on November 14, 2019. She argued that Agency engaged in prohibited discrimination practices based on her age. Employee also provided that her termination was retaliatory. As a result, she

---

[1] Employee's name was removed from this decision for the purposes of publication on the Office of Employee Appeals' website.

requested that Agency's termination action be reversed and that she be awarded back pay.[2]

Agency filed its answer on December 13, 2019. It denied that Employee was terminated based on her age or disability. Additionally, Agency contended that its termination action was not a result of retaliation against Employee. It explained that Employee was placed on an extensive PIP as a result of her performance issues, to no avail. Thus, Agency believed that Employee's failure to improve her work warranted the current termination action. Consequently, it requested that the adverse action be sustained.[3]

An OEA Administrative Judge ("AJ") was assigned to the matter in January of 2020. The AJ held a prehearing conference on May 4, 2020, during which it was determined that an evidentiary hearing was warranted. A hearing was subsequently held on November 16th and 17th of 2020, during which the parties presented testimonial and documentary evidence in support of their positions. The parties were then ordered to submit closing arguments by February 5, 2021.[4]

The AJ issued an Initial Decision on March 11, 2021. She held that Agency violated the District Personnel Manual ("DPM"), as it related to the implementation of Employee's PIP, because Agency improperly added to her workload during the relevant time period. She disagreed with Employee's argument that Agency failed to evaluate her performance under the PIP for at least thirty days, as required under DPM § 1410.3. The AJ provided that, notwithstanding Employee's Alternate Work Schedule ("AWS"), and the Fourth of July, Agency complied with DPM § 1499 by providing her with thirty calendar days of observation under the PIP. With respect to the specific performance goals outlined in Employee's PIP, the AJ concluded that Agency established cause to discipline Employee for the failure to meet Performance Goal No. 1 because she did not meet several deadlines for submitting cases to her

---

[2] *Petition for Appeal* (November 14, 2019).
[3] *Agency Answer to Petition for Appeal* (December 31, 2019).
[4] *Order for Closing Arguments* (January 5, 2021).

supervisor for review by the Alcohol Beverage Commission Board.[5] As it related to Performance Goal No. 2, the AJ opined that Employee failed to properly contact licensees regarding their applications and failed to adequately document and manage correspondence with the applicants.[6]

Concerning Employee's argument that Agency implemented the PIP in retaliation for filing a federal lawsuit with the Equal Employment Opportunity Commission, the AJ found no causal connection between her complaint and Agency's termination action. Therefore, the AJ determined that Employee was not retaliated against. Additionally, she opined that Agency failed to consider relevant mitigating factors or progressive discipline when selecting the appropriate penalty to levy against Employee. The AJ reasoned that the penalty of termination was excessive given Employee's years of service with Agency.[7] Further, she noted that Agency erred in not permitting Employee to retire in lieu of termination, although Employee emailed her supervisor prior to Agency's issuance of its proposed adverse action, indicating her intent to retire in February of 2020.[8]

Accordingly, the AJ held that Agency violated DPM §§1410.2 and 1410.3 when it added

---

[5] Performance Goal No. 1 included submitting all agenda or docket files/applications to Employee's supervisor in preparation for Board review by 4:00 p.m. each Tuesday.
[6] *Initial Decision* (March 11, 2021). The AJ did not address Performance Goals Nos. 3 and 4, noting that Agency met its burden of proof with respect to Goals Nos. 1 and 2. Thus, Agency established sufficient cause to discipline Employee based on her failure to meet established performance standards.
[7] *See also Douglas v. Veterans Administration*, 5 M.S.P.R. 313 (1981). The *Douglas* factors provide that an agency should consider the following when determining the penalty of adverse action matters: 1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; 2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; 3) the employee's past disciplinary record; 4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; 5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in employee's ability to perform assigned duties; 6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; 7) consistency of the penalty with any applicable agency table of penalties; 8) the notoriety of the offense or its impact upon the reputation of the agency; 9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; 10) potential for the employee's rehabilitation; 11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and 12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
[8] *Id*.

cases to Employee's already-established PIP without amending the PIP period or goals to accommodate the new, additional cases. She also determined that Agency's selection of the penalty of termination was an abuse of managerial discretion. As a result, the AJ concluded that Agency's actions constituted a reversible error. Therefore, Agency's termination action was reversed; Agency was ordered to permit Employee to retire effective February 6, 2020; and Agency was ordered to reimburse Employee all back pay and benefits lost as a result of the adverse action, from October 15, 2019 through February 6, 2020.[9]

Agency filed a Petition for Review with the OEA Board on April 15, 2021. It argues that the AJ erred in ruling that Agency violated DPM §§1410.2 and 1410.3 by adding cases to Employee's workload during the PIP because there is no prohibition within the applicable regulations against adding assignments during the observation period. Agency asserts that the AJ improperly held that selecting the penalty of termination was an abuse of managerial discretion and that it considered all options within its authority when determining that removal was the appropriate course of action. Moreover, it submits that the Initial Decision is not based on substantial evidence. Therefore, Agency requests that the Board grant its Petition for Review.[10]

Substantial Evidence

OEA Rule 633.3 provides that the Board may grant a Petition for Review when the AJ's decisions are not based on substantial evidence. Substantial evidence is defined as evidence that a reasonable mind could accept as adequate to support a conclusion. The Court in *Baumgartner v. Police and Firemen's Retirement and Relief Board*, 527 A.2d 313 (D.C. 1987), found that if

---

[9] *Id.*
[10] *Petition for Review* (April 15, 2021).

administrative findings are supported by substantial evidence, then it must be accepted even if there is substantial evidence in the record to support a contrary finding.[11]

Performance Improvement Plan

Agency first argues that the AJ erred in ruling that Agency violated 6B DPM §§1410.2 and 1410.3 by adding cases to Employee's workload during the PIP and evaluating her performance based on cases that were not enumerated at the beginning of the plan. In support thereof, it asserts that there is no prohibition within the applicable regulations against adding assignments during a PIP. Agency notes that Employee offered no evidence to prove that the additional cases were assigned during the PIP, and she failed to make any reference as to how this alleged action was improper.

In accordance with Section 1651(1) of the Comprehensive Merit Personnel Act ("CMPA") (D.C. Code §1-616.51 (2001)), disciplinary actions may only be taken for cause. Section 1605.4(m) of the DPM defines cause to include the failure to meet established performance standards. In an adverse action, OEA Rule 628.2, 59 DCR 2129 (March 16, 2012) provides that an agency must prove its case by a preponderance of the evidence. "Preponderance" is defined as "that degree of relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to find a contested fact more probably true than untrue."[12]

Chapter 14 of the DPM governs the implementation and regulation of PIPs. A PIP is a performance management tool designed to offer an employee the opportunity to demonstrate

---

[11] *Black's Law Dictionary*, Eighth Edition; *Mills v. District of Columbia Department of Employment Services*, 838 A.2d 325 (D.C. 2003); and *Black v. District of Columbia Department of Employment Services*, 801 A.2d 983 (D.C. 2002).
[12] OEA Rule 628.1, 59 D.C. Reg. 2129 (2012).

improvement in his or her work performance.[13] A PIP must last at least thirty days but cannot exceed ninety days. Additionally, a PIP must: 1) identify specific performance areas in which an employee is deficient and 2) provide concrete, measurable actions steps which the employee needs to take to improve the identified areas of deficiency.[14] Under DPM § 1410.4, a supervisor or other reviewer is required to complete a PIP when an employee's performance has been observed by the supervisor as being deficient. Section 1402 of the regulations provides the following:

> A Performance Improvement Plan (PIP) is designed to facilitate constructive discussion between an employee and his or her immediate supervisor to clarify areas of work performance that must be improved. Once the areas for improvement have been identified, the PIP provides the employee the opportunity to demonstrate improvement in those areas and his or her ability to meet the specified performance expectations.

In this case, the AJ held that Agency established that it had cause to initiate an adverse action against Employee for her failure to meet performance standards. However, she concluded that Agency violated DPM §§1410.2 and 1410.3 because it added cases Employee's already established PIP, without amending the PIP period or goals, to accommodate the additional cases. The AJ provided that these additional cases formed part of the basis of Employee's failed PIP and that Agency included these cases in support of its assertion that Employee did not meet the established performance goals. She reasoned that it was highly probative that Employee relied on the cases that she received at the beginning of the PIP in meeting her performance goals. Moreover, she explained that it could be reasonably assumed that upon receiving the PIP standards, Employee allocated time and resources according to her initial docket. Thus, the AJ concluded that the extra cases undermined the very purpose of the PIP and could not be used to

---

[13] DPM § 1410.2.
[14] DPM § 1410.3

accurately gauge her performance.

This Board believes that the AJ's analysis and rational regarding why Agency erred in implementing Employee's PIP is based on a reasonable interpretation of the regulatory language contained in DPM §§1410.2 and 1410.3. The AJ arrived at her conclusions based on the documentary and testimonial evidence provided during the evidentiary hearing. Because the AJ was the finder of fact in this case, we will defer to her credibility determinations.[15] While there is no distinct prohibition within the PIP regulations that prohibits adding assignments during the course of a PIP, employees are required to be afforded the opportunity to demonstrate improvement in those areas identified as below standard. Based on the totality of the circumstances, the AJ determined that Employee was not afforded a fair opportunity to do so and that Agency's actions constituted a harmful error. This Board agrees with the AJ's assessment, as her conclusions flow rationally from the facts presented. Consequently, we find no credible basis for disturbing her findings.

Penalty

Assuming *arguendo* there is substantial evidence to support Agency's contention that it complied with DPM § 1410.2 and § 1410.3, the Initial Decision can nonetheless be upheld based on the AJ's assessment of whether the penalty of termination was appropriate under the circumstances. This Board is tasked with determining if the AJ erred in reversing Agency's termination action because it failed to appropriately consider the *Douglas* factors; namely the

---

[15] *See, e.g.*, *Rocha-Guzmán v. District of Columbia Dep't of Emp't Servs.*, 170 A.3d 170, 175 (D.C. 2017) ("Credibility determinations are within the discretion of the [Administrative Law Judge (ALJ)], and typically are entitled to great weight due to the ALJ's unique ability to hear and observe witnesses first hand.") (internal quotation marks omitted); *Johnson v. District of Columbia Off. of Emp. Appeals*, 912 A.2d 1181, 1185 (D.C. 2006) ("[T]here can be substantial evidence on both sides of a dispute. If the administrative findings are supported by substantial evidence, we must accept them even if there is substantial evidence in the record to support contrary findings.") (internal quotation marks omitted).

mitigating circumstances surrounding the offense.[16] Regarding the appropriateness of Agency's penalty, the D.C. Court of Appeals in *Stokes v. District of Columbia* held that OEA must determine whether the penalty imposed was within the range allowed by law, regulation, and any applicable Table of Penalties; whether the penalty is based on a consideration of the relevant factors; and whether there is a clear error of judgment by agency.[17] In *Holland v. Department of Corrections*, the OEA Board held that an Agency's decision will not be reversed unless it failed to consider relevant factors or the imposed penalty constitutes an abuse of discretion.[18] OEA's review of an agency-imposed penalty is essentially to ensure that the agency conscientiously

---

[16] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 313 (1981), the Merit Systems Protection Board, this Office's federal counterpart, set forth a number of factors that are relevant for consideration in determining the appropriateness of a penalty. Though not exclusive, the factors include the following:
1. The nature and seriousness of the offense, and its relation to the employee's duties, including whether the offense was intentional or technical or inadvertent, or was committed intentionally or maliciously or for gain, or was frequently repeated;
2. The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
3. The employee's past disciplinary record;
4. The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
5. The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
6. Consistency of the penalty with those imposed upon other employees for the same or similar offenses;
7. Consistency of the penalty with any applicable agency table of penalties;
8. The notoriety of the offense or its impact upon the reputation of the agency;
9. The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
10. Potential for the employee's rehabilitation;
11. Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
12. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

[17] 502 A.2d 1006 (D.C. 1985).
[18] OEA Matter No. 1601- 0062-08, *Opinion and Order on Petition for Review* (September 17, 2012).

considered the relevant factors and struck a responsible balance within tolerable limits of reasonableness. Only if this Office finds that the agency failed to weigh the relevant factors or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for OEA to then specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.[19]

Chapter 16 of the DPM outlines the Table of Illustrative Penalties ("TIP") for various causes of adverse actions taken against District government employees. DPM §1607.2(m) provides that the penalty for a first offense of "failure to meet established performance standards" ranges from reassignment, reduced grade, to removal. Employee's personnel record reflects no previous disciplinary actions for this offense.

After reviewing the administrative record, this Board finds that the AJ's conclusion that the penalty of termination was improper is supported by substantial evidence. On July 19, 2019, Employee drafted an email addressed to Agency Director, Fred Moosally; Administrative Officer, Camille Johnson; Proposing Official, Sean Gordy; and Licensing Officer, Karen Jackson, indicating her intent to retire, effective February of 2020.[20] Employee testified that her decision to retire was based on her progressively worsening health.[21] Thus, Agency was placed on sufficient notice of Employee's intentions prior to the issuance of its July 31, 2019 Notice of Proposed Removal. Additionally, in the September 2, 2019 Hearing Officer's Written Report and Recommendation, Administrative Law Judge, Charles L. Thomas, recommended that lesser penalties, including a reduction in grade or reassignment, be imposed upon Employee and that termination should be the last resort. Officer Thomas' conclusions were based on the level of the infraction committed by Employee, the length of her employment history with Agency, and

---

[19] *Id.*
[20] Tr. Vol. II, p. 59.
[21] *Id.* at 60.

Employee's interest in retiring in February of 2020.[22]

Accordingly, we believe that the AJ's analysis of the imposed penalty was based on a consideration of the relevant factors. The AJ held that Agency failed to properly consider *Douglas* factor eleven, mitigating circumstances surrounding the offense. She noted that Employee's health, her request to take leave under the Family Medical Leave Act ("FMLA"), in addition to Employee's intent to retire, all served as mitigating circumstances that would warrant the selection of a penalty other than termination. We find that Employee's request to retire in February of 2020 was made voluntarily and without undue influence.[23] Employee requested to retire prior to the issuance of the proposed adverse action; however, Agency outright failed to respond to her correspondence. During the evidentiary hearing, the proposing official, Sean Gordy, testified that if he was made aware of Employee's request to take leave under the FMLA, as well as her health issues, he would not have moved forward with the termination. Agency's failure to weigh these mitigating factors constitutes an abuse of discretion.[24] Therefore, we find that the Initial Decision is based on substantial evidence. Consequently, we find no credible reason to disturb the AJ's findings.

Conclusion

Based on the foregoing, this Board concludes that Agency violated DPM § 1410.2 and § 1410.3 in implementing Employee's PIP. Additionally, Agency abused its managerial discretion

---

[22] *Agency Answer to Petition for Appeal*, Tab 2.
[23] *See generally District of Columbia Metropolitan Police Department v. Stanley*, 942 A.2d 1172 (D.C. 2008).
[24] *See also Anthony Payne v. D.C. Metropolitan Police Department*, OEA Matter No. 1601-0054-01, *Opinion and Order on Petition for Review* (May 23, 2008); *Dana Washington v. D.C. Department of Corrections*, OEA Matter No. 1601-0006-06, *Opinion and Order on Petition for Review* (April 3, 2009); *Ernest Taylor v. D.C. Emergency Medical Services*, OEA Matter No. 1601-0101-02, *Opinion and Order on Petition for Review* (July 21, 2007); *Larry Corbett v. D.C. Department of Corrections*, OEA Matter No. 1601-0211-98, *Opinion and Order on Petition for Review* (September 5, 2007); *Monica Fenton v. D.C. Public Schools*, OEA Matter No. 1601-0013-05, *Opinion and Order on Petition for Review* (April 3, 2009); *Robert Atcheson v. D.C. Metropolitan Police Department*, OEA Matter No. 1601-0055-06, *Opinion and Order on Petition for Review* (October 25, 2010); and *Christopher Scurlock v. Alcoholic Beverage Regulation Administration*, OEA Matter No. 1601-0055-09, *Opinion and Order on Petition for Review* (October 3, 2011).

in failing to consider the appropriate mitigating factors in selecting the penalty of termination. As a result, Agency's termination action must be reversed, and Agency shall permit Employee to retire effective February 6, 2020. Additionally, Agency is directed reimburse Employee for all back pay and benefits lost as a result of the termination action for the period of October 15, 2019 to February 6, 2020.

## **ORDER**

Accordingly, it is hereby **ORDERED** that Agency's Petition for Review is **DENIED.**

**FOR THE BOARD:**

_____
Clarence Labor, Jr., Chair

_____
Patricia Hobson Wilson

_____
Jelani Freeman

_____
Peter Rosenstein

_____
Dionna Maria Lewis

Either party may appeal this decision on Petition for Review to the Superior Court of the District of Columbia.  To file a Petition for Review with the Superior Court, the petitioning party should consult Superior Court Civil Procedure Rules, XV. Agency Review, Rule 1.