**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARGARET FOWLER,

        *Plaintiff*,

    v.

DISTRICT OF COLUMBIA,

        *Defendant*.

Civil Action No. 18-634 (RDM)

**MEMORANDUM OPINION**

Over the course of the past five plus years, the scope of this case has both narrowed as the Court has granted, in part or in whole, three separate motions to dismiss, Dkt. 17, Dkt. 30, Dkt. 48, and expanded or changed as the Court has permitted Plaintiff Margaret Fowler to file amended complaints as many times, Dkt. 23, Dkt. 33, Dkt. 40. As currently framed, only two claims remain before the Court. First, Fowler alleges that she was retaliated against for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (Count One). Second, she alleges that she was retaliated against for seeking a reasonable medical accommodation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. (Count Three). The Court previously dismissed Count Two for failure to state a claim. *See Fowler v. District of Columbia*, 2021 WL 4206591, at *7–9 (D.D.C. Sept. 16, 2021) ("*Fowler III*").

In the present motion, the District of Columbia ("District") seeks summary judgment on the remaining claims on multiple grounds, Dkt. 58, and Fowler opposes that motion, Dkt. 65. As explained below, the Court will grant summary judgment in favor of the District on Count One because Fowler failed to exhaust the Title VII retaliation claims that she now seeks to pursue,

and on Count Three because no reasonable jury could find that Fowler was terminated for engaging in FMLA-protected activity.

## I.  BACKGROUND

**A.     Factual Background**

For purposes of resolving the motion for summary judgment, the Court reviews "the facts in the record and all reasonable inferences derived therefrom in a light most favorable" to the nonmoving party.  *Coleman v. Duke*, 867 F.3d 204, 209 (D.C. Cir. 2017) (quoting *Al-Saffy v. Vilsack*, 827 F.3d 85, 89 (D.C. Cir. 2016)).  Considered in this light, the facts relevant to the pending motion are as follows:

Plaintiff Margaret Fowler worked at the Alcohol Beverage Regulation Administration ("ABRA") as a Licensing Specialist from August 17, 1987, until October 15, 2019.  Dkt. 66-1 at 1; Dkt. 66-2 at 1.  *See* Dkt. 58-5 at 4–5, 9–12.   The Court has already determined that Fowler's suit here is limited to events occurring after October 5, 2018.  *See Fowler III*, 2021 WL 4206591, at *7.  Accordingly, although the allegations set forth in Plaintiff's Third Amended Complaint stretch back to 2016, the Court will limit its discussion to the facts relevant to the pending motion: those that postdate October 5, 2018.

Fowler's first-line supervisor at that time was Sean Gordy, who worked as a Licensing Program Manager.  On November 2, 2018, Gordy issued Fowler a Notice of Proposed Suspension, which proposed to suspend her for five working days based on allegations of repeated tardiness.  *See* Dkt. 40 at 3 (Third Am. Compl. ¶¶ 22–24); Dkt. 58-6 at 2.  In response, Fowler sent a two-page letter to Fred Moosally, the Director of ABRA, explaining that she believed the proposed suspension was unwarranted for four reasons: (1) although she had been late for work on occasion, she believed that the proposal overstated the number of those

occasions; (2) the proposed action was retaliatory; (3) she had worked "anywhere from 10 to 12 hour days" in the past and had not been compensated; and (4) others had arrived late in the past without sanction.  Dkt. 58-6 at 2–3.  On December 20, 2018, Fowler received notice of ABRA's final decision to suspend her.  Dkt. 40 at 4 (Third Am. Compl. ¶ 27); Dkt. 51 at 3 (Answer).  She appealed that decision, but ABRA upheld it.  Dkt. 40 at 4 (Third Am. Compl. ¶¶ 28–29); Dkt. 51 at 3 (Answer).

About six months later, Fowler faced further disciplinary action.  On June 25, 2019, Gordy sent Fowler a notice indicating that ABRA was "placing [her] on a Performance Improvement Plan (PIP) for no more than Thirty (30) Days" because "a recent mid-year review of [her] performance . . . found that [she] continue[d] to display a blatant disregard for ABRA policies and standard operating procedures."  Dkt. 58-8 at 2.  In July 2019, Fowler met with her second-line supervisor, Karen Jackson, three times to discuss the PIP, and Jackson sent Fowler an email with comments about their conversation after each of those meetings.  *See* Dkt. 58-9, Dkt. 58-10, Dkt. 58-11.

During the same period, Fowler engaged in two other interactions with management.  First, on July 19, 2019, she emailed Moosally, Gordy, Jackson, and ABRA's Administrative Officer, Human Resources Advisor Camille Robinson, indicating that she wished to retire in February 2020.  Dkt. 66 at 3; *see also* Dkt. 66-2 at 3, 9.  Second, Fowler requested that she be allowed to take FMLA leave "to recuperate and undergo a procedure for her disability."  Dkt. 40 at 6 (Third Am. Compl. ¶ 59).  According to Fowler, she spoke with Robinson about FMLA leave on July 29, 2019, Dkt. 58-3 at 19, and provided "documents" that Robinson "signed off on" in August 2019, *id.* at 21, but "nothing became of it," *id.*

Meanwhile, Fowler's managers had begun to initiate removal procedures against her.  On July 31, 2019, Fowler received a Notice of Proposed Termination.  Dkt. 40 at 7 (Third Am. Compl. ¶ 73); *see also* Dkt. 58-12.  The notice explained the basis for the proposed action and attached a number of materials, including her PIP, the ABRA Standard Operating Procedures for Handling Case Assignments, and three memoranda summarizing the PIP meetings that occurred in July 2019.  Dkt. 58-12 at 6.

The next day, Fowler filed a Charge of Discrimination with the DC Office of Human Rights ("DCOHR") and cross-filed the same charge with the U.S. Equal Employment Opportunity Commission ("EEOC").  Dkt. 58-13.  That charge covered events that occurred between January 11, 2019, and June 25, 2019.  *Id.* at 2.  In it, Fowler also noted that she had "filed previous complaints about [her] Supervisor, Sean Gordy, with the EEOC."  *Id.* at 2.  The charge alleged that both Gordy "and Karen Jackson, Supervisor, had continued to mark [her] cases with the initials 'MF' which [was] against the decision that was reached in a previous case which said that [her] cases would be marked with the initials 'MGF;'" that her "disability ha[d] not been accommodated even after [she] provided documentation;" and that "Gordy [had] continuously ma[de] [her] job more difficult by taking [her] case files and moving them."  *Id.* Fowler also described how she "had been given a large amount of work even though [she] ha[d] difficulty getting through such a large amount of cases with [her] disability."  *Id.*  Based on this assertedly ongoing conduct, the charge claimed that Fowler had been discriminated against in violation of Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.  *Id.* at 2–3.  Notably, the charge did not refer to Fowler's suspension six months earlier, her PIP, or the proposed termination that she had received the day before.

While that complaint was being processed, the removal proceedings against Fowler moved forward.  On October 15, 2019, she received a Final Notice of Removal, which took effect on October 25, 2019.  Dkt. 66-2 at 1.  However, on November 14, 2019, Fowler appealed her termination to the D.C. Office of Employee Appeals ("OEA"), alleging both that it was the product of age-based discrimination and that it was retaliatory.  *Id.*  ABRA disputed Fowler's allegation and maintained that she was terminated for legitimate, non-discriminatory reasons: because she was placed on a PIP due to "performance issues" and then failed to remedy those shortcomings while the PIP was in place.  *Id.* at 2.  After conducting an evidentiary hearing, the OEA Administrative Judge ("AJ") found that ABRA had violated D.C. policy by adding to Fowler's workload while the PIP was in place, but nonetheless concluded that the agency had "established cause to discipline [Fowler] for the failure to meet" two performance goals in the plan.  *Id.* at 2–3.  The AJ also "found no causal connection between her complaint and [ABRA's] termination action" and, accordingly, found that she "was not retaliated against."  *Id.* at 3.  Notwithstanding those findings, the AJ determined that the agency erred in failing "to consider relevant mitigating factors or progressive discipline when selecting the appropriate penalty," "that the penalty of termination was excessive given [Fowler's] years of service with the [a]gency," and that the agency should have permitted Fowler "to retire in lieu of termination," particularly since Fowler had emailed her supervisor before the agency issued its proposed adverse action expressing an intent to retire in February 2020.  *Id.*

ABRA appealed the AJ's decision to the OEA Appeals Board, which upheld the AJ's reversal of Fowler's termination.  *Id.* at 11.  Fowler's termination was, accordingly, reversed, and she was allowed to retire effective February 6, 2020, and granted backpay and benefits.  *Id.* at 9–11.

**B.      Procedural Background**

This action has run in parallel to the events described above.  Fowler commenced this

action on March 20, 2018, alleging that she was subjected to a hostile work environment in

violation of Title VII and to discrimination based on her age in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  Dkt. 1 at 3–6 (Compl.

¶¶ 21–46).  On January 23, 2019, the Court granted Defendants' partial motion to dismiss

without prejudice.  Dkt. 17.  Fowler, then, filed an amended compliant on March 19, 2019, Dkt.

23, and, with leave of the Court, Dkt. 32, a second amended complaint on October 30, 2019, Dkt.

30.  After further briefing, the Court granted Defendants' renewed motion to dismiss, but

allowed Fowler a third (or fourth, depending on how one counts), bite at the apple.  Dkt. 39.

Accepting that opportunity, Fowler filed her Third Amended Complaint on December 11,

2020, Dkt. 40, which invited yet another motion to dismiss, Dkt. 42.  This time, however, the

Court granted the motion only in part and permitted the case to proceed with respect to some of

her claims against one of the defendants.  Dkt. 48.  In particular, the Court dismissed all claims

against ABRA with prejudice on the ground that it is *non sui juris*.  *Id.* at 8.  The District of

Columbia, in contrast, is a proper defendant, and it remains a party to this case.  The Court

further concluded that Fowler's Title VII retaliation claims based on a December 2017 right-to-

sue letter were time barred, *id.* at 11, and, accordingly, dismissed those retaliation claims with

respect to the events in that letter, *id.* at 12.  But the Court concluded that Fowler's allegations

were sufficient to permit her Title VII retaliation claim with respect to events occurring after

October 5, 2018, to proceed to discovery.  *Id.* at 12–14.

The Court also granted in part and denied in part the District's motion to dismiss

Fowler's FMLA claims.  The Court granted the District's motion to dismiss Fowler's FMLA

6

interference claim, concluding that the Third Amended Complaint failed plausibly to allege that ABRA unduly delayed or improperly handled her request for FMLA-protected leave. *Id.* at 18. But the Court denied the District's motion to dismiss her FMLA retaliation claim, concluding that the close temporal proximity between the protected conduct and her termination was sufficient, at least at the motion to dismiss stage, to support a plausible inference of causation. *Id.* at 19–21.

After completing discovery, the District filed the pending motion for summary judgment. Dkt. 58.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248) (emphasis added).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Liberty Lobby*, 477 U.S. at 255.  Accordingly, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*

To defeat a summary judgment motion, however, the nonmoving party must offer more than "a scintilla of evidence," *id.* at 252, or mere "speculation," *Hutchinson v. CIA*, 393 F.3d 226, 229 (D.C. Cir. 2005), in support of her position.  Instead, the non-moving party must set

forth "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted), which means that the non-moving party must point to "evidence on which the jury could reasonably find" for her side, *Liberty Lobby*, 477 U.S. at 252.  "In essence, . . . the inquiry [is] . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.

## III.  ANALYSIS

### A.  Exhaustion of Title VII Retaliation Claim

Before a plaintiff may bring a civil action for retaliation under Title VII, she must file an EEOC charge for "[e]ach discrete discriminatory act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), within 180 days of the discriminatory act's occurrence, *see* 42 U.S.C. § 2000e-5(e)(1).  This deadline is extended to 300 days if the plaintiff first initiates proceedings with a state or local equal employment opportunity agency.  *Id.*; *see also Craig v. District of Columbia*, 881 F. Supp. 2d 26, 31 (D.D.C. 2012).  "Title VII's charge-filing instruction is not jurisdictional," *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019), but it is a "mandatory claim-processing rule" that may create a dispositive defense, *id.* at 1851.  The DCOHR and the EEOC have a "worksharing agreement" under which a plaintiff may, among other things, cross-file a DCOHR charge with the EEOC.  *See Savignac v. Jones Day*, 486 F. Supp. 3d 14, 25–26 (D.D.C. 2020); *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 178 (D.D.C. 2010).

Fowler first filed an EEOC charge in late 2017, and the EEOC issued a right-to-sue letter in December 2017.  As mentioned above, the Court has already dismissed as untimely Fowler's Title VII retaliation claims relating to the events addressed in that 2017 right-to-sue letter; as the Court explained, Fowler failed to bring this action within 90 days of receiving that letter, thus

barring her from asserting any claims raised in her 2017 EEOC charge. *Fowler III*, 2021 WL 4206591, at *5–6.

Fowler filed a second charge with the DCOHR, which she cross-filed with the EEOC, on August 1, 2019. Dkt. 58-13. She received a right-to-sue letter for that charge as well, and unlike Fowler's earlier EEOC charge, the District does not argue that she failed to bring this action within 90 days of receiving that 2019 right-to-sue letter. Nor does the District dispute that she has timely exhausted any claims raised in that charge involving conduct that occurred up to 300 days before August 1, 2019—that is, any conduct occurring between October 5, 2018, and August 1, 2019. Rather, the only question raised by the District's motion for summary judgment on Count One of Fowler's Third Amended Complaint is whether her 2019 DCOHR/EEOC charge included the following purportedly retaliatory acts: (1) her December 20, 2018 notice of suspension; (2) her June 25, 2019 PIP; and (3) and her October 15, 2019 notice of termination.[1] Dkt. 40 at 5–6 (Third Am. Compl. ¶¶ 51–52). For the reasons explained below, the Court concludes that it did not and that, accordingly, the District is entitled to summary judgment on Count One.

---

[1] Fowler seems surprised that the District's motion for summary judgment focuses on these three claims. She asserts in her opposition brief that the "issues related to and addressed in Plaintiff's claims are not simply limited to her PIP, suspension, and termination, as listed in Defendant's Motion for Summary Judgment." Dkt. 66 at 6. But the litany of instances of mistreatment she lists in her opposition are the incidents that she reported in her 2017 DCOHR/EEOC charge. *Compare* Dkt. 66 at 6, *with* Dkt. 58-4 at 2–4. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). As the Court explained in its September 2021 Memorandum Opinion and Order, the period covered by Fowler's 2019 DCOHR/EEOC charge is from October 5, 2018, to August 1, 2019. *Fowler III*, 2021 WL 4206591, at *7. "[O]nly incidents that took place within the timely filing period are actionable." *Morgan*, 536 U.S. at 114. Fowler has not alleged that any of these other incidents occurred within the relevant period and has not proffered any evidence that would permit a reasonable jury to find that they did.

As the Supreme Court explained in *Morgan*, "42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." 536 U.S. at 109 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). That provision requires an aggrieved employee to "file a charge within the statutory time period and serve notice upon the person against whom the charge is made," and it bars all claims challenging discrete acts of discrimination or retaliation that are not raised "within these time limits," *id.*, "even when they are related to acts alleged in timely filed charges," *id.* at 113. These procedures—and limitations—moreover, are only meaningful if the aggrieved employee is required to identify the challenged, discrete acts with reasonable specificity. Although an EEOC charge does not demand the type of precision and legal acumen required to plead a claim in federal court, the agency cannot investigate—and the employer cannot respond to—a charge that is not raised. Here, Fowler's 2019 DOCHR/EEOC charge does not clear this modest bar with respect to the three claims now at issue.

Little more is required than to note that the charge makes no mention—no mention whatsoever—of any of the three allegedly retaliatory acts that Fowler seeks to challenge in this case. *See* Dkt. 40 at 5–6 (Third Am. Compl. ¶¶ 51–52) (alleging "adverse action . . . in the form of a five day suspension and her ultimate termination," and "adverse action . . . when she was placed on a Performance Improvement Plan"). Although the charge does, literally, check the box for "retaliation," it identifies only one specific allegedly retaliatory act: "Both [Gordy] and Karen Jackson, Supervisor, have continued to mark my cases with the initials 'MF' which is against the decision that was reached in a previous case which said that my cases would be marked with the initials 'MGF.'" Dkt. 58-13 at 2. The charge also contained several conclusory assertions. First: "I filed an EEOC charge previously, 570-2018-00225, and I have been

retaliated against in the workplace ever since I filed this charge." *Id.*  Second: "I believe I have

been discriminated against in retaliation for complaining in violation of Title VII of the Civil

Rights Act of 1964, as amended." *Id. at* 3.  Neither party has suggested that Fowler attached any

additional documents to her DCOHR/EEOC charge that might have added further detail to those

assertions, and there is no mention anywhere in the charge of the suspension, the PIP, or the

(subsequently rescinded) termination.

Fowler contests this fact but has offered the Court no evidence to the contrary.  Citing to

Fowler's August 1, 2019 DHOHR/EEOC charge, the District's Statement of Undisputed

Material Facts asserts that "[t]he 2019 EEOC charge did not specifically mention or complain

about Plaintiff's November 2018 suspension, the 2019 PIP, or her 2019 notice of termination."

Dkt. 58-2 at 5 (Def.'s SUMF ¶ 25).  In her response to this uncontroversial proposition, Fowler

asserts:

> Plaintiff denies this statement.  In her charges, Plaintiff references and states she
> filed previous complaints, about the unwarranted changes in her job
> requirements, about her previously filed EEOC charges, and retaliation she has
> suffered.  See ECF Doc. 58-13, Def.'s Ex. K at 2–3 (EEOC Charge dated August
> 1, 2019).

Dkt. 66-1 at 7 (Pl.'s Response to SUMF ¶ 25).  That is a *non sequitur* on multiple levels.  First,

to the extent she merely intends to highlight her prior, protected activity, doing so says nothing

about what retaliatory acts, if any, were allegedly taken in response to that protected activity.  A

retaliation claim has two essential elements: (1) the plaintiff must have engaged in protected

activity, and (2) the defendant must have taken some adverse action against the plaintiff in

retaliation for engaging in that protected activity.  A plaintiff cannot satisfy the second element

by merely reaffirming that she has satisfied the first.  That disconnect is particularly evident here

because the DHOHR/EEOC charge does purport to identify one retaliatory act—marking her cases with the initials "MF"— that is unrelated to the acts that she now alleges were retaliatory.

Second, to the extent Fowler intends, instead, to suggest that she somehow incorporated by reference her prior allegations of discrimination, those cross-referenced acts were not identified with sufficient specificity and, in any event, were almost certainly untimely. Moreover, to the extent that she intends to refer to the acts asserted in her prior complaints—that is, in the very protected activity that forms the basis for her current retaliation claim—that contention is incoherently circular.  An employer cannot retaliate against an employee by engaging in the acts that formed the basis for the complaint, as those acts would have necessarily occurred before the complaint was filed and thus before the protected activity alleged to have motivated the retaliation.

Finally, Fowler concedes in her opposition brief that "[h]er termination was not listed on this charge because it did not occur until afterwards, in October 2019."  Dkt. 66 at 7.  She offers no explanation, however, for why she did not mention her notice of *proposed* termination, which was issued on July 31, 2019—the day before she filed her DHOCH/EEOC charge.  Notably, she alleges in her FMLA retaliation claim before this Court (although not in her Title VII retaliation claim) that the July 31, 2019, notice of proposed termination was retaliatory.  Dkt. 40 at 7 (Third Am. Compl. ¶ 73).

Equally bewildering is Fowler's contention that she exhausted administrative remedies because "[s]he lists [in her Third Amended Complaint] several examples in her EEOC Charges, including the removal of her files, receiving no explanations for removals, overseeing her work, having to work late without compensation, verbal abuse, physical assault, treating younger employees more favorable, denying leave, being wrongfully placed on PIP, denying promotional

opportunities and giving them to younger employees, denying accommodations, and experiencing retaliation." Dkt. 66 at 7. For support, she cites to both her 2017 and 2019 EEOC charges, but, problematically, the only specific allegations of retaliatory conduct (other than the use of the wrong initials on her files) are all included in the 2017 EEOC charge only. *See* Dkt. 58-4. But, again, the Court has already held that Fowler's claims based on that charge are time barred. Dkt. 48 at 10–12.

Fowler attempts to salvage her claims by invoking the standard from *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995), where the D.C. Circuit held that a plaintiff may bring claims that are "like or reasonably related to" the allegations of an administrative charge. *Id.* at 907 (internal quotation marks and citation omitted). As this Court has previously held, however, after the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "the 'reasonably related' rule 'no longer reflects the state of the law.'" *Hargrove v. AARP*, 205 F. Supp. 3d 96, 119 (D.D.C. 2016) (quoting *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137 (D.D.C. 2004)). Although the D.C. Circuit has not yet weighed in on the question, *see Haynes v. DC Water & Sewer Auth.*, 924 F.3d 519, 526–27 n.1 (D.C. Cir. 2019), "'[m]ost district court decisions in this circuit have concluded that this rule did not survive *Morgan*.'" *Clark v. Johnson*, 206 F. Supp. 3d 645, 657 (D.D.C. 2016) (quoting *Achagzai v. Broad. Bd. of Governors*, No. 14–768, 2016 WL 471274, at *6 (D.D.C. Feb. 8, 2016)). "[F]ollowing *Morgan*, 'the procedural requirements of Title VII . . . must be assessed on a claim-by-claim basis and . . . satisfaction of the procedural requirements for a 'relate[d]' act of discrimination is insufficient, except in those cases in which the 'very nature' of the claim 'involves repeated conduct.'" *Clark*, 206 F. Supp. 3d at 657–58 (alterations in original) (quoting *Hargrove*, 205 F. Supp. 3d at 110). Thus, claims relating to discrete acts "such as termination,

failure to promote, denial of transfer, or refusal to hire," *Morgan*, 536 U.S. at 114, require

separate exhaustion regardless of whether they are "reasonably related" to other exhausted

claims. *Clark*, 206 F. Supp. 3d at 658; *see also Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139,

149 (D.D.C. 2005); *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 183 (D.D.C. 2007).

But, in any event, even if the *Park* standard still applied, or even if the Court were to

apply a less demanding standard for events occurring after the charge was filed, Fowler's Title

VII claims would still fail.  Under *Park*, a plaintiff was allowed to bring claims that are "'like or

reasonably related to the allegations of the charge and growing out of such allegations.'"

*Haynes*, 924 F.3d at 526 (quoting *Park*, 71 F.3d at 907).  The *Park* court, however, also observed

that:

> Although it is true that the administrative charge requirement should not be
> construed to place a heavy technical burden on 'individuals untrained in negotiating
> procedural labyrinths,' it is also true that 'the requirement of some specificity in a
> charge is not a "mere technicality."'

*Park*, 71 F.3d at 907 (citations omitted).  Exhaustion requirements serve to "giv[e] the charged

party notice of the claim and narrow[] the issues for prompt adjudication and decision."  *Id.*

(internal quotation marks and citation omitted).  "'[T]he goals behind the requirement of prior

resort to administrative relief would be frustrated if the filing of a general charge with the EEOC

would open up the possibility of judicial challenges to any related conduct that took place in

connection with the employment relationship.'"  *Id.* at 908 (quoting *Rush v. McDonald's Corp.*,

966 F.2d 1104, 1110 (7th Cir. 1992)) (alteration in original).

The claims that Fowler now seeks to pursue are not remotely "like or reasonably related"

to the claims she administratively exhausted in her 2019 DCOHR/EEOC charge.  The assertion

that Gordy "continue[d] to treat [her] poorly in the workplace," Dkt. 58-13 at 2, is far too vague

to satisfy the exhaustion requirement with respect to Fowler's suspension, PIP, or proposed

termination, and the contention that Fowler's files were marked with the initials "MF" rather than "MGF" has nothing to do with any of the claims she now seeks to assert, *id.*  Even reading her charge liberally to treat her complaint about receiving "a large amount of work" despite her "disability," *id.*, as bearing on her retaliation claim—rather than or in addition to her disability claim—that adverse action is not "reasonably related" to the claims raised in her Third Amended Complaint.[2]  Nor does she argue otherwise.  If the exhaustion requirement is to have any meaning—under any plausible standard—Fowler has failed to exhaust the claims that she now seeks to litigate.

The Court will, accordingly, grant summary judgment in favor of the District on Fowler's Title VII retaliation claim (Count One).

## B.     FMLA Retaliation Claim

"The FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he was engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2)."  *Hopkins v. Grant Thornton Int'l*, 851 F. Supp. 2d 146, 152 (D.D.C. 2012).  Here, only Fowler's retaliation claim remains.

In analyzing FMLA retaliation claims, "courts apply the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009).  Under that framework, an "employee may establish a prima facie case creating a presumption of retaliation" by showing "(1) that he exercised rights

---

[2] Notably, Fowler does not allege in her Third Amended Complaint that she was assigned an excessive amount of work in retaliation for engaging in any protected activity, and so that claim is not before the Court.

afforded by the [FMLA], (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights and the adverse employment action." *Id.* (internal quotation marks omitted and alterations in original). If the employee makes this prima facie showing, the employer may overcome the presumption of retaliation by "producing evidence of a legitimate, non-discriminatory reason for its action." *Id.* Once an employer has proffered some legitimate non-retaliatory reason for its action, however, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the "central question at summary judgment becomes whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual reason and that the employer intentionally . . . retaliated against the employee." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

The District first argues that Fowler has not and cannot establish a causal link between her exercise of her FMLA rights and the adverse employment action that she alleges, namely, her proposed and actual termination. Dkt. 58-1 at 7. Although Fowler claims that she was terminated because she requested FMLA leave, Gordy signed her notice of proposed removal on July 31, 2019, which was *before* Fowler filed her application for FMLA leave with Robinson in August 9, 2019. *Id.* (citing Def.'s SUMF ¶¶ 20, 27). At the motion to dismiss stage, the Court held that there was a plausible inference of causation because Fowler alleged that she had previously spoke to Robinson about using the FMLA on July 29, 2019, two days before Gordy signed her proposed removal. Dkt. 48 at 19. At this juncture, however, Fowler must do more

than allege that she had a conversation with an HR official two days before her manager proposed her termination.

Even accepting Fowler's assertion that she spoke to Robinson about taking FMLA leave, she has failed to offer any evidence that would permit a reasonable jury to find that Gordy learned of that conversation before he issued the proposal just two days later.  At her deposition, Fowler was asked "to your knowledge, who other than Camille Robinson was aware of your [FMLA] application?"  Dkt. 58-7 at 51 (Fowler Dep. 190:7–9).  Fowler answered, "Camille Robinson told Sean Gordy, Fred Moosally, Martha Jenkins."  *Id.* (Fowler Dep. 190:10–11).  But when asked, "how do you know that," she responded:

> Because one, Sean Gordy's her friend.   [And, two,] she's not just [the] Administrative Officer, she's also the HR person.  She has to tell him.  He's the program manager.  She has to tell him that.

*Id.* (Fowler Dep. 190:20–191:2).  Fowler also testified that she sent Moosally and Jenkins documents relating to her request for FMLA leave.  *Id.* (Fowler Dep. 190:7–19); *see also id.* at 52 (Fowler Dep. 192:3–14).

At this stage of the proceeding, Fowler needs to support her contention that Gordy was aware of her July 29 conversation with Robinson when he proposed her termination two days later, and mere speculation that he had to have been told will not suffice.  But even if one indulges Fowler's (not implausible) suggestion that an HR manager would have been required at some point to inform an employee's program manager that the employee was planning on taking FMLA leave, there is no reason to infer that such a conversation occurred within two days of when the employee first "spoke with the [HR representative] about using FMLA" leave, Dkt. 58-3 at 21, and more than a week before the employee submitted the actual application. Similarly, Fowler's testimony that she sent Moosally and Jenkins documents relating to her request for

17

FMLA leave did not indicate when she sent those documents, and, without contrary evidence, it seems improbable that she sent them the documentation before submitting it to Robinson on August 9, 2019.  The Court is therefore unpersuaded that Fowler has proffered sufficient evidence to permit a reasonable jury to infer that Gordy (or Moosally or Jenkins) knew of Fowler's conversation with Robinson such that it could have caused him to propose her termination.

Her claim fails for a second, independently sufficient reason as well.  The District has offered substantial evidence to support its contention that Gordy proposed Fowler's removal for legitimate, nonretaliatory reasons.  In responding to Fowler's interrogatories, for example, Gordy attests that he proposed her termination because of a variety of performance deficiencies.  He attests, for example, that she "failed to submit overdue cases to Management for Board consideration even after repeated requests from her supervisors and clients," which "adversely impacted operations;" that she "failed to meet deadlines for submission of items for the licensing agenda, resulting in delays in customers receiving placards;" that she "failed to respond to requests to access or view files in her possession" and "failed to create file folders promptly upon receiving case assignments;" that she "failed to respond within one business day to internal and external customer emails and voice mail messages and failed [to] provide clear and detailed information as to the nature of her inquiry when sending emails to internal and external customers;" that she "failed to input critical application data in the . . . system or, if entered, data fields were often incomplete or incorrect;" and that she "failed to submit monthly reports to Management with files and supportive information[] and failed to promptly correct errors in the . . . system identified in the review of her monthly licensing issuance reports."  Dkt. 58-5 at 5–7.

Those asserted performance deficiencies, moreover, were documented when Fowler was placed on a PIP in June 2019, Dkt. 58-8, in follow-up discussions, Dkt. 58-9, Dkt. 58-10, Dkt. 58-11, and in the notice of proposed termination itself, Dkt. 58-12.  The substance of these concerns, moreover, was upheld by the OEA AJ and Board, even if they ultimately concluded that the penalty of removal was unduly harsh and that Fowler should have, instead, been permitted to retire voluntarily on February 6, 2020.  Dkt. 66-2 at 1011.

This evidence is sufficient to shift the burden to Fowler to offer evidence that would permit a reasonable jury to find that those reasons were pretextual and that the actual reason for the proposed termination was to retaliate against Fowler for requesting FMLA leave.  *See Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019).  "In particular, before concluding that the employer has carried its burden under the second prong, the Court must consider (1) whether the employer has produce[d] evidence that a factfinder may consider at trial (or a summary judgment proceeding); (2) whether that evidence is sufficient to permit a reasonable jury to find that the employer's action was motivated by a non-discriminatory reason; (3) whether the proffered, non-discriminatory reason is facially credible in light of the proffered evidence; and (4) whether the evidence present[s] a clear and reasonably specific explanation." *Kirkland v. McAleenan*, 2019 WL 7067046, at *14 (D.D.C. Dec. 23, 2019) (quoting *Figueroa*, 923 F.3d at 1087) (internal quotation marks omitted).  Each of these requirements is satisfied on the present record.

The burden, therefore, shifts to Fowler to proffer sufficient evidence to permit a reasonable jury to find that these asserted reasons for taking the challenged adverse action were pretextual and that ABRA proposed her termination in retaliation for the fact that she spoke to Robinson about the FMLA on July 29, 2019.  *See Brady*, 520 F.3d at 494.  At this step in the

process, "a plaintiff can show discrimination 'either directly by persuading the [factfinder] that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (alteration in original)).  The plaintiff must, however, offer evidence of some type that would permit a reasonable jury to find that the asserted reasons for acting were pretextual and that the actual reason was retaliation.

Here, however, Fowler fails meaningfully to join issue on this important factual question. She offers no evidence that would permit a reasonable jury to find that ABRA's stated reasons for proposing her removal were pretextual and no evidence that would permit a reasonable jury to find that the actual reason the agency proposed her removal was because she discussed the FMLA with Robinson.  In disputing that the reasons set forth in the notice of proposed termination were "true and accurate," Fowler cites to only two pieces of evidence.  Dkt. 66-1 at 5–6 (Pl.'s Response to SUMF ¶ 20).  She first cites to the OEA Board's opinion stating that her removal was overly harsh.  Dkt. 66-2.  But even if that opinion were admissible—or might be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(2) & (c)(4)—it does not support Fowler's contention that the reasons set forth in the notice of proposed termination were pretextual; to the contrary, it notes that "the AJ held that [ABRA] established that it had cause to initiate an adverse action," Dkt. 66-2 at 6.  Moreover, although the AJ and Board concluded that the proposed penalty was overly harsh, and that ABRA should have considered "lesser penalties," *id.* at 9, differences in managerial judgment do not, standing alone, establish pretext. *See Allen v. Johnson*, 795 F.3d 34, 41 (D.C. Cir. 2011) ("[M]ere disagreement with an employer about reasonable judgments concerning the employee's evaluation and meeting participations—

judgments that are especially subject to managerial discretion—is not enough to sustain a Title VII claim.").  Second, she cites to her own testimony, which merely asserts that her termination "was erroneous," but which offers no further detail.  Dkt. 58-7 at 50 (Fowler Dep. 185:3–186:10).

Finally, in her opposition brief, Plaintiff suggests that a reasonable jury could find that the notice of proposed termination was pretextual because it was premised on "prior" "adversary actions," including her suspension and PIP, and the factual basis for those prior actions "is absolutely a disputed fact."  Dkt. 66 at 10.  It defies logic, however, to maintain that those "prior actions" were fabricated as a pretext to terminate Fowler in retaliation for seeking FMLA leave when such actions all occurred *before* Fowler had made any mention of the FMLA to Robinson.

For both of these reasons, the Court will grant summary judgment to the District on Fowler's FMLA retaliation claim (Count Three).

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment, Dkt. 58, as to all remaining claims.

A separate order shall issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 30, 2024

21